# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARY ANN MCBRIDE, et al., ) | Civil Action No. 2:15-cv-11222 |
| *Plaintiffs*, ) | |
| ) | Hon. Sean F. Cox |
| v. ) | Mag. David R. Grand |
| ) | |
| MICHIGAN DEPARTMENT ) | |
| OF CORRECTIONS, et al., ) | |
| ) | |
| *Defendants*. ) | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON COUNTS I & II OF THE COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Abraham Singer (P23601)
Kitch Drutchas Wagner
Valitutti & Sherbrook
One Woodward Avenue
Ste 2400
Detroit, MI 48226
(313) 965-7445
abraham.singer@kitch.com

Deborah M. Golden (of counsel)
Elliot M. Mincberg (of counsel)
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036
(202) 319-1000
deborah_golden@washlaw.org
elliot_mincberg@washlaw.org

Andrew D. Lazerow
Stephen C. Bartenstein
Philip J. Levitz
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
alazerow@cov.com
sbartenstein@cov.com
plevitz@cov.com

Chris E. Davis (P52159)
Mark A. Cody (P42695)
Michigan Protection and
Advocacy Service, Inc.
4095 Legacy Parkway, Ste 500
Lansing, MI 48911
(517) 487-1755
cdavis@mpas.org
mcody@mpas.org

Claire O'Brien (of counsel)[*]
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
cobrien@cov.com

*Attorneys for Plaintiffs*

---

[*] Ms. O'Brien is a member of the bar of North Carolina.  She is supervised by principals of the firm in the District of Columbia.

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Mary Ann McBride and Ralph Williams (collectively, "Plaintiffs"), by and through their attorneys, respectfully move for summary judgment pursuant to FED. R. CIV. P. 56(a).  For the reasons set forth in Plaintiffs' accompanying memorandum of law, Plaintiffs are entitled to summary judgment, on behalf of themselves and all deaf and hard of hearing prisoners in the custody of the Michigan Department of Corrections ("MDOC"), on Counts I and II of the Complaint.[1]

There is no genuine dispute of material fact that Plaintiffs and other deaf and hard of hearing prisoners in MDOC's custody have been excluded from participation in, denied benefits of, and subjected to discrimination in MDOC services, programs, and activities by reason of their disability.  Accordingly, there is no genuine dispute that MDOC's conduct has violated, and continues to violate, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq. and the Rehabilitation Act, 29 U.S.C. § 794 et seq.  Among other failings, Defendants have not provided consistent access to adequate telecommunication technology, auxiliary aids (such as sign language interpreters), or visual emergency notification and announcement systems for Plaintiffs to effectively communicate and

---

[1] Plaintiffs' motion for class certification pursuant to FED. R. CIV. P. 23(b)(2) is pending.  Docket No. 61.

iii

participate equally in MDOC services and programs.  These deficiencies violate the ADA and the Rehabilitation Act as a matter of law.

Pursuant to Local Rule 7.1, on March 8, 2017, Plaintiffs' counsel participated in a telephone conference with Defendants' counsel and explained the nature of this motion.  Plaintiffs requested but did not obtain concurrence in the relief sought in this motion.

Dated: March 17, 2017                     Respectfully submitted,

                                          /s/ Andrew D. Lazerow
                                          Andrew D. Lazerow
                                          Stephen C. Bartenstein
                                          Philip J. Levitz
                                          Covington & Burling LLP
                                          One CityCenter
                                          850 Tenth Street, NW
                                          Washington, DC 20001

                                          *Attorneys for Plaintiffs*

iv

## PLAINTIFFS' MEMORANDUM OF LAW

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1.  Whether there is any genuine issue of material fact that Plaintiffs have, by reason of their disabilities, been excluded from participation in, denied the benefits of, or subjected to discrimination in MDOC services, programs, or activities in violation of the Americans with Disabilities Act, 29 U.S.C. § 12101 et seq.

2.  Whether there is any genuine issue of material fact that Plaintiffs have, solely by reason of their disabilities, been excluded from participation in, denied the benefits of, or subjected to discrimination in MDOC programs or activities in violation of the Rehabilitation Act, 29 U.S.C. § 794 et seq.

## <u>CONTROLLING OR MOST IMPORTANT AUTHORITY</u>

*Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901 (6th Cir. 2004) (Ex. YY)

*Alexander v. Choate*, 469 U.S. 287 (1985) (Ex. ZZ)

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)  (Ex. AAA)

*Clarkson v. Coughlin*, 898 F. Supp. 1019 (S.D.N.Y. 1995) (Ex. BBB)

*Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202 (4th Cir. 2017) (Ex. CCC)

*Karlik v. Colvin*, 15 F. Supp. 3d 700 (E.D. Mich. 2014) (Ex. DDD)

*Keith v. Cty. of Oakland*, 703 F.3d 918 (6th Cir. 2013) (Ex. EEE)

*Niece v. Fitzner*, 922 F. Supp. 1208 (E.D. Mich. 1996) (Ex. FFF)

*Pierce v. D.C.*, 128 F. Supp. 3d 250 (D.C. Cir. 2015) (Ex. GGG)

*U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321 (6th Cir. 2013) (Ex. HHH)

# **TABLE OF CONTENTS**

Page

CONCISE STATEMENT OF ISSUES PRESENTED ........................................... vi

CONTROLLING OR MOST IMPORTANT AUTHORITY ................................. vii

INTRODUCTION ......................................................................................... 1

STATEMENT OF FACTS ............................................................................. 3

I.      Named Plaintiffs ............................................................................... 3

II.     Overview of MDOC's Policies, Procedures, and Practices ........................... 3

        A.      Identification and Classification of Deaf and Hard of Hearing
                Prisoners ............................................................................. 3

        B.      Telecommunications Services and Auxiliary Aids ............................ 5

        C.      Notification of Prison Warnings and Announcements ........................ 8

        D.      Training Related to Treatment and Accommodation of Deaf and
                Hard of Hearing Prisoners ........................................................ 9

III.    Undisputed Expert Testimony ................................................................ 10

LEGAL STANDARD .................................................................................. 12

ARGUMENT ............................................................................................ 12

I.      Plaintiffs Have Been Denied Benefits of MDOC Services and
        Programs by Reason of Their Disability in Violation of the Americans
        with Disabilities Act ........................................................................... 12

        A.      Insufficient Access to Telecommunications Services and
                Auxiliary Aids ...................................................................... 13

        B.      Inadequate Notification of Prison Warnings and
                Announcements ..................................................................... 19

        C.      Absence of Training Related to Treatment and Accommodation
                of Deaf and Hard of Hearing Prisoners ....................................... 20

II.     Plaintiffs Have Been Denied Benefits of MDOC Services and
        Programs by Reason of Their Disability in Violation of the
        Rehabilitation Act ........................................................................... 22

III.    Necessary Relief ............................................................................. 24

        CONCLUSION ................................................................................. 25

## **INTRODUCTION**

Before Plaintiffs filed this lawsuit, the Michigan Department of Corrections ("MDOC") had not taken any steps to systematically identify or classify the 200 deaf and hard of hearing prisoners in its custody, and provided only minimal accommodations to those prisoners.  Now, nearly two years later, MDOC's litigation-induced changes are welcome, but still fall well short of what is required under the law to remedy MDOC's years-long neglect.

The fact and expert record developed by Plaintiffs demonstrates indisputably that Plaintiffs and other deaf and hard of hearing prisoners in MDOC's custody have been, and continue to be, excluded from equal participation in and denied benefits of MDOC services, programs, and activities because of their disability, in violation of the law.  MDOC has housed—and continues to house—numerous deaf and hard of hearing prisoners at facilities not designated for such prisoners, has failed to install videophones at any facility, has failed to provide consistent access to sign language interpreters, and has failed to ensure effective communication with deaf and hard of hearing prisoners in emergencies.  Moreover, MDOC provides no system-wide training for its employees related to treatment of or accommodations for deaf and hard of hearing prisoners.  Not surprisingly, such prisoners have complained about their mistreatment by prison staff.

Plaintiffs' two nationally-renowned experts in accommodations for deaf and hard of hearing individuals relied, in large part, on facts that MDOC itself has admitted to conclude that MDOC fails to provide reasonable accommodations for deaf and hard of hearing prisoners.  And MDOC's response to the comprehensive reports from Plaintiffs' two experts?  Nothing.  Defendants did not serve a single expert report to contradict anything in Plaintiffs' reports.

Plaintiffs therefore are entitled to summary judgment on Counts I and II of the Complaint, on behalf of themselves and the class of deaf and hard of hearing prisoners for which they are seeking certification pursuant to FED. R. CIV. P. 23(b)(2).  Plaintiffs seek an order requiring that MDOC come into full compliance with the ADA and the Rehabilitation Act, including by ensuring videophone access, auxiliary aids including American Sign Language ("ASL") interpreters for all high-stakes interactions, visual notification systems for emergencies and routine announcements, and training for correctional officers and other staff on how to identify and appropriately interact with deaf and hard of hearing prisoners.

2

## STATEMENT OF FACTS

### I.    Named Plaintiffs

Plaintiffs are deaf or hard of hearing prisoners who are or were in the

custody of MDOC.  Statement of Material Facts Not in Dispute ("SMF") ¶ 1.[2]

Plaintiffs filed this class action lawsuit on behalf of themselves and all deaf and

hard of hearing individuals who are or will be in the custody of MDOC, seeking

declaratory and injunctive relief requiring MDOC to provide the assistance

necessary for deaf and hard of hearing prisoners to participate in MDOC programs

and services on an equal basis with hearing prisoners.

### II.   Overview of MDOC's Policies, Procedures, and Practices

MDOC does not have adequate policies, procedures,[3] or practices to provide

appropriate system-wide accommodation for deaf and hard of hearing prisoners.

#### A.    Identification and Classification of Deaf and Hard of Hearing Prisoners

Before this lawsuit was filed in March 2015, MDOC had no statewide policy

even for identifying deaf and hard of hearing prisoners, no list of such prisoners,

and had taken no systematic steps to transfer deaf and hard of hearing prisoners to

facilities designated for housing them.  SMF ¶¶ 3−5.  A year after this lawsuit was

---

[2] Plaintiff Brian Stanley Wittman has been released from MDOC custody and is currently on parole.  SMF ¶ 1 n.1.

[3] Plaintiffs use the term "policies and procedures" to refer both to statewide policy directives and facility-specific operating procedures.  The term also includes other guidance materials, such as guidance memoranda.

filed, MDOC created a document which, for the first time, established MDOC guidelines for identifying deaf and hard of hearing prisoners and classifying their hearing loss.  SMF ¶ 6.  But aside from a single sentence specifying that *one* single hearing aid "will be issued for prisoners with deficit in *both* ears of 26 decibels or greater," the document contains no detail describing appropriate accommodations for deaf and hard of hearing prisoners.  SMF ¶ 7 & Ex. I (emphasis added).  And MDOC has no other policy directive focused on accommodations for deaf and hard of hearing prisoners—even though MDOC's designated 30(b)(6) witness understands that such a policy is "the only way we're going to be consistent in applying different practices throughout the department."  SMF ¶¶ 13−14.

Although MDOC purports to have six facilities designated to house deaf and hard of hearing individuals, MDOC in fact has housed and continues to house numerous prisoners with "severe and profound" hearing loss at facilities not designated to house such prisoners.  SMF ¶¶ 8−11.  Indeed, MDOC's current list of deaf and hard of hearing prisoners indicates that 84 of the 200 deaf and hard of hearing prisoners in its custody (42%) continue to be housed at non-designated facilities—including 32 of the 82 prisoners with the most severe hearing loss classification (39%).  SMF ¶ 11.  MDOC also has established no standards (or even guidelines) for what types of accommodations are necessary for an MDOC

4

facility to be considered capable of housing deaf and hard of hearing prisoners. SMF ¶ 12.

**B.    Telecommunications Services and Auxiliary Aids**

Video-based communication is now the standard mode of remote communication for deaf and hard of hearing individuals who communicate through sign language.  SMF ¶ 15.  Video-based communication allows deaf and hard of hearing individuals to communicate with hearing individuals through the federal government-sponsored video relay service ("VRS") at no cost.  SMF ¶¶ 16, 20. Through this service, a deaf individual communicates via video to an interpreter using ASL, and the interpreter then interprets orally to the hearing individual on the call.  SMF ¶ 17.  Video-based communication also allows deaf and hard of hearing individuals to communicate directly with other deaf and hard of hearing individuals using ASL.  SMF ¶ 18.  Video-based communication may be monitored by prison staff for security purposes like any other telecommunications system.  SMF ¶ 19.  The MDOC official responsible for these issues has acknowledged that video-based communication and the VRS service can be made available at MDOC facilities at no cost, and that video-based communication can be monitored for security purposes.  SMF ¶¶ 19−20.

Despite these admissions, MDOC has not installed videophones at any MDOC facilities.  SMF ¶ 21.  The only method of remote communication MDOC

offers to deaf and hard of hearing prisoners is the teletypewriter ("TTY"). SMF ¶¶ 21−22. And 55 deaf and hard of hearing prisoners, including 21 deaf and hard of hearing prisoners with MDOC's most severe hearing loss classification, are housed at MDOC facilities that do not even have a TTY. SMF ¶ 23. TTY, in any event, is a 60-year old, outdated technology that allows a deaf or hard of hearing individual to type a message that a deaf or hard of hearing recipient can view if, and only if, the recipient also has a TTY. SMF ¶ 24. Because TTYs are largely obsolete, many deaf and hard of hearing individuals do not have TTYs, and thus would not be able to communicate with prisoners like Plaintiffs via TTY. SMF ¶ 25.

MDOC's responsible officials have admitted that TTYs are outdated. SMF ¶ 31 & Ex. R, at 2, 4. As the MDOC official principally responsible for technology for deaf and hard of hearing prisoners has explained to others at MDOC in an internal email: "we are hearing . . . from the prisoners . . . that [TTY] is outdated and the family members and the community no longer have the machines. It would be comparable to sending someone a fax to their homes versus an email to communicate." SMF ¶¶ 13, 31.

Moreover, because TTYs require typing and reading, they require proficiency in written English. SMF ¶ 26. Deaf and hard of hearing individuals often lack such proficiency because ASL has its own distinct structure, syntax, and grammar that does not easily translate to written English. SMF ¶¶ 27−29.

6

Defendants also have failed to provide auxiliary aids in the form of consistent access to certified sign language interpreters.  Until July 1, 2015, MDOC contracted with a single vendor, Linguistica International ("Linguistica"), to provide ASL interpreter services at all MDOC prison facilities.  SMF ¶ 32. Linguistica failed to consistently provide interpreters when they were requested by MDOC.  SMF ¶ 33.  MDOC terminated the contract with Linguistica on July 1, 2015, and MDOC has not secured the services of a single, statewide provider of interpreter services to replace Linguistica.  SMF ¶¶ 34−35.  Rather, MDOC instructed individual facilities to retain their own interpreter service providers via purchase order.  SMF ¶ 36.  This resulted in gaps—in one case for eight months— during which certain MDOC facilities had not retained any replacement providers of interpreter services.  SMF ¶ 37.  Such gaps have left MDOC to rely on untrained and uncertified fellow inmates as *de facto* interpreters, as well as ineffective lip-reading and "pen and paper."  SMF ¶¶ 38−40.

A one-page MDOC memo, issued shortly after this case was filed, listed certain situations when ASL and foreign language interpretation services should be provided.  SMF ¶ 41.  But the memo does not require that MDOC provide interpreters in connection with important activities such as religious services, and does not establish any specific procedures to ensure that interpreters are available, including in high-stakes situations like unexpected medical emergencies and

7

hospital visits.  SMF ¶¶ 42, 45−47 & Ex. BB.  Nor has MDOC taken any steps to

monitor or verify whether its facilities are complying with the memo.  SMF ¶ 43.

Accordingly, in many cases, ASL interpreters have not been available for activities

for which they are theoretically required, like medical appointments.  SMF ¶ 48.

MDOC also does not provide access to video remote interpreting ("VRI"),

*i.e.*, remote interpreters accessible by video that are especially beneficial in

emergency situations.  SMF ¶¶ 49−51.  MDOC discontinued VRI after completing

a pilot program.  SMF ¶ 51.

Such sporadic access to ASL interpreters precludes deaf and hard of hearing

prisoners who use ASL from consistent and effective participation in MDOC

programs and services.  *See generally* SMF ¶¶ 42−48.

## C.    Notification of Prison Warnings and Announcements

MDOC does not ensure effective communication with deaf and hard of

hearing prisoners for emergencies or routine announcements on a system-wide

basis.  SMF ¶ 52.  Thus, MDOC does not provide adequate visual notification of

announcements and safety alerts (such as fire alarms or alarms signaling

emergency lockdowns) at every MDOC facility where such prisoners are housed,

SMF ¶ 52−54, or adequate systems of visual notification for daily activities such as

meal time and count time.  SMF ¶ 55.[4]

### D.    Training Related to Treatment and Accommodation of Deaf and Hard of Hearing Prisoners

MDOC lacks any system-wide policies or procedures addressing training

related to the treatment of or accommodations for deaf and hard of hearing

prisoners.  SMF ¶ 64.  Nor does MDOC provide or have any plans to provide such

training.  SMF ¶¶ 65−71.  Thus, MDOC does not provide any training on:

- issues related to identification and classification of deaf and hard of hearing prisoners, SMF ¶ 66;
- use and maintenance of TTYs, SMF ¶ 67;
- access to ASL interpreters, SMF ¶ 68;
- visual systems of notification for alarms and announcements, SMF ¶ 69; or
- the needs of deaf and hard of hearing prisoners in emergencies, SMF ¶ 70.

Notably, MDOC has received multiple complaints related to the

mistreatment of deaf and hard of hearing prisoners by prison staff, demonstrating

the urgent need for such training.  SMF ¶ 58.  In one instance, Plaintiff McBride

filed a grievance explaining that she was degraded and humiliated by an MDOC

officer who mocked her manner of speaking, despite being informed by other

---

[4] MDOC implemented a pilot program at one facility involving a one-way communication system (known as the Page Alert Broadcast System) that allows MDOC employees to send messages to pagers issued to deaf and hard of hearing prisoners.  SMF ¶ 56.  MDOC is in the process of rolling out this system at other facilities designated to house deaf and hard of hearing prisoners.  *Id.*  But the pagers have not worked consistently at the pilot facility, resulting in crucial information gaps, and are not available at any non-designated facilities.  SMF ¶¶ 56−57.

prisoners that Ms. McBride was deaf.  SMF ¶¶ 59−60.  Ms. McBride's grievance against the offending officer included supporting statements from eight eyewitnesses.  SMF ¶ 61.  These eyewitnesses reported that a senior officer observed the exchange, but did not intervene.  SMF ¶ 62.  Yet MDOC dismissed Ms. McBride's grievance because "[McBride] is unaware of what comments and statements [were] being made due to there was no interpreter present.  There fore (sic) grievance is denied due to insufficient evidence."  SMF ¶ 63.  In other words, the grievance was denied *because Ms. McBride is deaf*—and because MDOC failed to provide an interpreter.

## III.   Undisputed Expert Testimony

Plaintiffs have presented expert reports from two of the foremost authorities on accommodations for deaf and hard of hearing individuals, who have thoroughly reviewed the record in this case.  Dr. Dennis Cokely is a tenured professor of ASL and Modern Languages at Northeastern University, and has 48 years of experience with deaf individuals.  SMF ¶ 72.  Mr. Richard Ray, who is deaf, has been employed by the City of Los Angeles Department of Disability for the past 23 years to assess, monitor, and ensure the city's compliance with the ADA, Rehabilitation Act, and other disability laws.  SMF ¶ 73.

Both experts conclude that MDOC has failed to provide reasonable accommodations to deaf and hard of hearing prisoners.  Dr. Cokely found that

MDOC systematically denies meaningful and effective communicative access for deaf and hard of hearing prisoners, and denies them access to services, programs, and benefits that are afforded to other prisoners.  SMF ¶ 74.  Mr. Ray found that MDOC fails to provide deaf and hard of hearing prisoners with the means to communicate effectively with individuals both inside and outside of MDOC, to receive important announcements, and to have equal access to prison facilities, programs, services, and activities.  SMF ¶ 75.

Both experts conclude that MDOC must, at minimum, provide the following accommodations to reasonably accommodate deaf and hard of hearing prisoners: (1) access to videophones; (2) consistent access to qualified sign language interpreters; (3) in-cell visual alarms and/or notification systems at all facilities that house deaf and hard of hearing prisoners; and (4) mandatory training to ensure MDOC staff understand how to interact appropriately with deaf and hard of hearing prisoners.  SMF ¶ 76.  Dr. Cokely further concludes that a review of all MDOC policies and procedures, with appropriate modifications where warranted, is necessary to ensure that deaf and hard of hearing prisoners are not systematically disadvantaged relative to prisoners who are not deaf or hard of hearing.  SMF ¶ 77.

MDOC has offered no expert reports or testimony to contradict any of the conclusions of Dr. Cokely or Mr. Ray.

## LEGAL STANDARD

"A court must grant 'summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." *U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326–27 (6th Cir. 2013) (quoting FED. R. CIV. P. 56(a)). A fact is material only if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).

## ARGUMENT

### I.    Plaintiffs Have Been Denied Benefits of MDOC Services and Programs by Reason of Their Disability in Violation of the Americans with Disabilities Act

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "By separately identifying as requirements of public entities that they not deny qualified disabled individuals the benefits of public services and that they not discriminate against such individuals, th[is] provision demands more of public entities than simply refraining

12

from intentionally discriminating against disabled individuals." *E.g.*, *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 909–10 (6th Cir. 2004).

Whatever a public entity's intent, the ADA also requires affirmative steps to "make reasonable accommodations for disabled individuals so as not to deprive them of meaningful access to the benefits of the services such entities provide." *Id.* at 907.  This affirmative duty is "at its apex" in the context of the uneven power dynamics of a prison, where prison officials "have complete control over whether prison inmates . . . receive any programs or services at all." *Pierce v. D.C.*, 128 F. Supp. 3d 250, 269, 272 (D.D.C. 2015) (citing *Brown v. Plata*, 563 U.S. 493, 510 (2011); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

MDOC's treatment of deaf and hard of hearing prisoners does not come close to satisfying these standards.

## A.   Insufficient Access to Telecommunications Services and Auxiliary Aids

Regulations promulgated under the ADA require that, to reasonably accommodate individuals with disabilities, "[a] public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public, and companions with disabilities are as effective as communications with others."  28 C.F.R § 35.160(a).  A public entity also must "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service,

13

program, or activity of a public entity." *Id.* § 35.160(b)(1). "In order to be effective," these "auxiliary aids and services must be provided in accessible formats [and] in a timely manner." *Id.* § 35.160(b)(2).

MDOC has failed to take the necessary steps to ensure that deaf and hard of hearing prisoners' communications are as effective as those of hearing prisoners, and to provide appropriate auxiliary aids to permit communication and participation on an equal basis.

*First*, MDOC does not provide access to telecommunications services to permit deaf and hard of hearing prisoners to communicate with others outside the prison on an equal basis with hearing prisoners who can communicate by telephone. As this court has explained, if a public entity "does in fact provide a [telecommunications] service," "it must use methods or criteria that do not have the purpose or effect of impairing its objectives with respect to individuals with disabilities." *Niece v. Fitzner*, 922 F. Supp. 1208, 1218 (E.D. Mich. 1996) (citation omitted) (denying motion to dismiss prisoner's ADA claim regarding failure to accommodate communication with deaf fiancé). MDOC has failed to satisfy that standard here.

MDOC does not provide deaf and hard of hearing prisoners with access to video-based communication in any form. SMF ¶ 21. Yet undisputed expert evidence confirms that video-based communication is the only way many deaf and

14

hard of hearing prisoners can communicate with others outside the prison as effectively as hearing prisoners. SMF ¶¶ 15, 24−27, 76; Ex. P at 6–12, 26 (Ray Expert Report); Ex. Q at 4–5, 45–48 (Cokely Expert Report).[5] And MDOC has admitted, consistent with undisputed expert evidence, that video-based communication is available at no cost, and that such communication can be monitored for security purposes. SMF ¶¶ 19−20.

Nor do MDOC's TTYs provide an alternative mode of communication nearly "as effective" as that afforded to hearing prisoners. 28 C.F.R § 35.160(a). As an initial matter, many deaf and hard of hearing prisoners in MDOC custody are housed at facilities that do not even have a TTY. SMF ¶ 23. Moreover, to comply with the ADA, public entities must "operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by, people with disabilities." 28 C.F.R. § 35.150. The record is undisputed that TTYs are not as readily usable for deaf and hard of hearing prisoners as telephones are for other prisoners. SMF ¶¶ 24−29, 31. In fact, undisputed expert evidence confirms that TTYs are *useless* to the many deaf and hard of hearing individuals who are not proficient in written English, or who

---

[5] "Where experts present unequivocal, uncontradicted, unimpeached testimony," "a court cannot lightly disregard the experts' conclusions." *United States v. Larkins*, 657 F. Supp. 76, 82 (W.D. Ky. 1987), *aff'd*, 852 F.2d 189 (6th Cir. 1988).

wish to communicate with the large—and rapidly growing—ranks of deaf individuals that no longer have TTYs.  *Id.*

Moreover, even if TTYs could serve as a viable alternative to video-based communications, providing only this option despite the reasonable requests of deaf and hard of hearing prisoners for a video-based alternative (SMF ¶ 30) would not satisfy the ADA.  ADA regulations require that, "[i]n determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of individuals with disabilities."  28 C.F.R. § 25.160(b)(2).

Other courts have recognized that TTYs are outdated and ineffective, and that video-based technology is necessary to reasonably accommodate deaf and hard of hearing prisoners.  *See, e.g.*, *Pierce*, 128 F. Supp. 3d at 261 & n.7, 284 (D.D.C. 2015) (finding TTY is "outmoded" and "[t]wo deaf individuals cannot communicate via TTY unless both parties have a TTY device and can type in English effectively" and granting summary judgment to deaf prisoner seeking videophone access and other accommodations under the ADA); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 207 (4th Cir. 2017) ("TTY is old technology that is fast becoming obsolete. . . .  Because a TTY device is required on both ends of the call, the abandonment of TTY technology means there are fewer and fewer

16

people with whom Heyer can communicate."); *id.* ("Effective communication over a TTY device requires proficiency in written English.").

Accordingly, MDOC's failure to provide equal telecommunications access to deaf and hard of hearing prisoners violates the ADA as a matter of law.

*Second*, MDOC does not provide sufficient access to auxiliary aids for deaf and hard of hearing prisoners to communicate and participate in programs and activities inside the prison on an equal basis with hearing prisoners. For instance, MDOC does not provide reliable access to certified sign language interpreters, even for important activities such as religious services. SMF ¶¶ 33, 37−39, 42−48. Undisputed expert evidence confirms that reasonable accommodation of deaf and hard of hearing prisoners requires that certified ASL interpreters be available for prison activities like religious services. SMF ¶ 76; Ex. P, at 21–23 (Ray Expert Report); Ex. Q, at 4, 50 (Cokely Expert Report). And MDOC does not provide video remote interpreting in any circumstance, despite undisputed expert evidence that the service is necessary at a minimum for emergency situations. SMF ¶¶ 50−51; Ex. P, at 23–24 (Ray Expert Report); Ex. Q, at 51−52 (Cokely Expert Report).

Because sign language interpreters are often unavailable, MDOC has created a situation in which deaf and hard of hearing prisoners have had to rely on untrained and uncertified fellow inmates as *de facto* interpreters. SMF ¶ 38. But

17

ADA regulations are clear that "[a] public entity shall not require an individual with a disability to bring another individual to interpret for him or her."  28 C.F.R. § 35.160(c)(1).[6]  Undisputed expert evidence also confirms that uncertified "social signers" cannot substitute for certified interpreters.  SMF ¶ 76; Ex. Q, at 41–43 (Cokely Expert Report).  Nor can other makeshift methods on which MDOC has relied, like lip-reading and "pen and paper."  Undisputed expert evidence confirms that the best lip readers can recognize only approximately 10−30% of words.  SMF ¶ 40.  And pen and paper, like TTYs, requires proficiency in written English that deaf and hard of hearing individuals often lack.  SMF ¶¶ 27−29.

The law confirms that such *ad hoc* efforts do not permit equal and effective communication access, and do not satisfy the ADA.  *See, e.g.*, *Pierce*, 128 F. Supp. 3d at 277 (granting summary judgment to deaf prisoner on ADA claim based in substantial part on failure to provide ASL interpreters for "significant aspects of [the prisoner's] incarceration experience"); *id.* at 259, 275−77, 284 (finding use of fellow inmate as interpreter and reliance on lip-reading and written notes insufficient); *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1038, 1047 (S.D.N.Y. 1995) (granting summary judgment to deaf prisoners on ADA claim based in

---

[6] ADA regulations further require that "auxiliary aids and services must be provided . . . in such a way as to protect the privacy and independence of the individual with a disability," which is difficult if not impossible when using fellow inmates as interpreters.  28 C.F.R. § 35.160(b)(2); *see also* Ex. P, at 22 (Ray Expert Report); Ex. Q, at 42 (Cokely Expert Report).

substantial part on failure to provide consistent access to qualified interpreters);

*Taylor v. City of Mason*, 970 F. Supp. 2d 776, 782 (S.D. Ohio 2013) (use of

uncertified ASL interpreter does not provide "opportunity to communicate as

effectively as a non-disabled person under the circumstances"). *Cf. Heyer*, 849

F.3d 202, 210 (finding that defendants' failure to provide ASL interpreters for a

deaf prisoner's medical interactions led to constitutionally inadequate treatment for

the prisoner's serious medical needs, and amounted to deliberate indifference).

### B.      Inadequate Notification of Prison Warnings and Announcements

In addition to its failure to provide effective communication methods for

deaf and hard of hearing prisoners to participate equally in prison services and

programs, MDOC also has failed to ensure that deaf and hard of hearing prisoners

are consistently notified of emergency and other announcements. ADA regulations

require that "[p]ublic entities shall implement reasonable policies . . . so as to

ensure that each inmate with a disability is housed in a cell with the accessible

elements necessary to afford the inmate access to safe, appropriate housing." 28

C.F.R. § 35.152(b)(3). MDOC has not satisfied that standard.

Undisputed expert evidence confirms that deaf and hard of hearing prisoners

require visual notification systems for emergencies and for routine announcements

in order to participate safely and effectively in prison life, and that MDOC has not

sufficiently provided such systems. SMF ¶¶ 54, 74−76. Courts have found ADA

19

violations in similar circumstances. *See Clarkson*, 898 F. Supp. at 1047 (S.D.N.Y.

1995) (granting summary judgment to deaf prisoners on ADA claim in part

because the prisoners were "completely at risk in the event of fire" when there

were no visual alarms); *see also Heyer*, 849 F.3d at 220 (finding genuine issue as

to constitutional adequacy of accommodation for deaf prisoner, even when in-cell

alarm was provided, when "BOP cannot guarantee that [the prisoner] will always

be assigned to one of the four cells where the strobe lights were installed").

## C.     Absence of Training Related to Treatment and Accommodation of Deaf and Hard of Hearing Prisoners

Defendants admit that they have no system-wide policy of providing training

of any form on how to properly identify, communicate, and interact with deaf and

hard of hearing prisoners.  SMF ¶¶ 64−66.  ADA guidance makes clear that lack of

training "in many cases" leads to discriminatory practices, and it is therefore

"appropriate for public entities to evaluate training efforts."  *See* Appendix B, 1991

Section-by-Section Analysis on 28 C.F.R. § 35.105, at 192 (attached as Ex. III);

*see also* H.R. Rep. No. 101–485, pt. III, at 490 (1990) (attached as Ex. JJJ) ("[T]o

comply with the [ADA's] non-discrimination mandate, it is often necessary to

provide training to public employees about disability. . . . [D]iscriminatory

treatment based on disability can be avoided by proper training").

Undisputed expert evidence confirms that MDOC's lack of training on

issues related to deaf and hard of hearing prisoners prevents MDOC from

20

reasonably accommodating such prisoners, and treating them appropriately.  SMF

¶ 76; Ex. Q, at 6, 31–32, 34, 36–37, 53–54 (Cokely Expert Report); Ex. P, at 25

(Ray Expert Report).  And courts have agreed that evidence of a prison system's

failure to adequately train on such issues is relevant to an ADA claim—even when

the prison system *does* provide substantial training.  *See Holmes v. Godinez*, 311

F.R.D. 177, 194, 226 (N.D. Ill. 2015) (evidence of training inadequacy relevant "to

the extent such inaction contributed to a widespread denial of access to the

programs, activities, and services that Plaintiffs . . . challenge").

MDOC's undisputed lack of training thus further supports summary

judgment here.

*     *     *

Any one of MDOC's failures to appropriately accommodate Plaintiffs is

sufficient to grant summary judgment for Plaintiffs.  So too is MDOC's admission

that there are numerous deaf and hard of hearing prisoners housed at facilities not

designated to house them, and thus likely lacking even the limited

accommodations available at designated facilities.  SMF ¶¶ 10−11, 23; *Clarkson*,

898 F. Supp. at 1050–51 (placing certain deaf and hard of hearing prisoners at

facilities not designated for accommodations, even for "disciplinary, safety and/or

medical reasons," renders the prison system's "accommodations *conditional* and is

therefore violative of the ADA").

21

Even if there were some failure described above that did not alone justify summary judgment, however, MDOC's collective failings surely do. MDOC's overall conduct has systematically failed to provide the reasonable accommodations necessary to ensure that deaf and hard of hearing prisoners have equal access to a wide range of MDOC programs and services. SMF ¶¶ 74–76. Courts have repeatedly granted summary judgment on deaf and hard of hearing prisoners' ADA claims when the holistic picture of a prison's accommodations is similarly inadequate. *See, e.g.*, *Pierce*, 128 F. Supp. 3d at 254, 284 (granting summary judgment, despite "vehement disagree[ment] about many of the facts related to the case," where enough facts made clear a holistic failure to provide for prisoner's equal participation in prison programs); *Clarkson*, 898 F. Supp. at 1027, 1038 (granting summary judgment where prison system failed to provide "the complete range of auxiliary aids and assistive devices required to permit class members to participate fully in and benefit from [prison] programs, services, and activities . . . in each of the facilities in which class members are incarcerated").

Just as in these cases, summary judgment on Plaintiffs' ADA claim is appropriate here too.

## II. Plaintiffs Have Been Denied Benefits of MDOC Services and Programs by Reason of Their Disability in Violation of the Rehabilitation Act

Because MDOC receives federal funds for a variety of its programs (SMF ¶ 2), the Rehabilitation Act applies here. 29 U.S.C. § 794(a). The Rehabilitation

Act is "reviewed under the same standards that govern ADA claims," *Keith v. Cty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013), and provides that no "qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

Like the ADA, the Rehabilitation Act prohibits not only intentional discrimination, but any exclusion from equal participation on the basis of a disability.  As the Supreme Court has noted, the legislative history of the Rehabilitation Act makes clear that Congress was responding to its determination that "[d]iscrimination against the handicapped was . . . most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect."  *Alexander v. Choate*, 469 U.S. 287, 295 (1985).

Because "[c]laims brought pursuant to the Rehabilitation Act are analyzed in essentially the same way as claims under the Americans with Disabilities Act," *Karlik v. Colvin*, 15 F. Supp. 3d 700, 708 n.2 (E.D. Mich. 2014), summary judgment is appropriate on Plaintiffs' Rehabilitation Act claim for the same reasons as for the ADA claim discussed in Part I above.  There is no genuine issue of fact that Defendants have violated the Rehabilitation Act in excluding deaf and hard of hearing prisoners from equal participation in MDOC programs solely by

23

reason of their disability. Other courts have granted summary judgment for deaf and hard of hearing prisoners on Rehabilitation Act claims under similar circumstances. *See, e.g.*, *Clarkson*, 898 F. Supp. at 1032; *Pierce*, 128 F. Supp. 3d at 284. This Court should do the same here.

## III. Necessary Relief

Because there is no genuine issue of material fact that Defendants have violated the ADA and the Rehabilitation Act, the Court should award relief in the form of an order requiring MDOC to implement the full range of accommodations necessary for deaf and hard of hearing prisoners' equal participation in MDOC services and programs. Accordingly, Plaintiffs seek an order:

1. Entering summary judgment in favor of Plaintiffs on Counts I and II of the Complaint;

2. Mandating that, at a minimum, MDOC:

    a) Make videophones available to all deaf and hard of hearing prisoners;

    b) Provide necessary auxiliary aids for all deaf and hard of hearing prisoners to participate equally in prison programs and services, including consistent access to ASL interpreters for all high-stakes[7] interactions and programs;

---

[7] Including, but not limited to, unexpected medical emergencies, hospital visits, psychological evaluations, offender treatment programs, disciplinary/investigative proceedings, religious activities, and educational courses and evaluations. *See* Ex. Q, at 4 (Cokely Expert Report).

    c)  Implement in-cell visual notification systems for emergencies and routine announcements in all facilities housing deaf and hard of hearing prisoners;

    d)  Institute mandatory training for MDOC's correctional officers and other staff on how to identify and appropriately interact with deaf and hard of hearing prisoners;

    e)  Adopt effective and comprehensive policies and procedures in each of the above areas; and

    f)  Utilize an independent monitor to monitor compliance; and

3.  Requiring the parties to meet and confer in an attempt to agree on an appropriate consent order implementing the relief specified in No. 2 above, and to file such a proposed order (or, if necessary, Plaintiffs' proposed order and Defendants' objections) for this Court's review and approval, within 60 days of the Court's granting this motion.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion for Summary Judgment on Counts I & II of the Complaint, and enter an order reflecting the relief specified in Part III above.

Dated: March 17, 2017          Respectfully submitted

                        <u>/s/ Andrew D. Lazerow</u>
                        Andrew D. Lazerow
                        Stephen C. Bartenstein
                        Philip J. Levitz
                        Covington & Burling LLP
                        One CityCenter
                        850 Tenth Street, NW
                        Washington, DC 20001
                        (202) 662-6000

                        *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2017, I caused a true and correct copy of

the foregoing **Motion for Summary Judgment on Counts I & II and**

**Incorporated Memorandum of Law** to be served on all counsel of record via

ECF.

<u>/s/ Andrew D. Lazerow</u>
*Attorney for Plaintiffs*
