UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY ANN McBRIDE, et al.,

               Plaintiffs,           Civil Action No. 15-11222
                                                    Honorable Sean F. Cox
v.                                                   Magistrate Judge David R. Grand

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

               Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [61]**

The plaintiffs in this action – Mary Ann McBride ("McBride"), Brian Stanley Wittman ("Wittman"), and Ralph Williams ("Williams") (collectively, "Plaintiffs") – are deaf and/or hard-of-hearing individuals who, at all relevant times, were confined at various Michigan Department of Corrections ("MDOC") facilities. The defendants are the MDOC, and various MDOC administrators and prison wardens (collectively, "Defendants"). Plaintiffs contend that as a result of certain MDOC policies they have been denied the assistance and accommodation that they require to effectively communicate and to participate in MDOC programs, services, and activities, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*; the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*; the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*; and the First and Fourteenth Amendments of the United States Constitution.

1

## I. RECOMMENDATION

Presently before the Court for a Report and Recommendation is Plaintiff's motion for class certification. (Docs. #17, #61). For the reasons stated below, the Court **RECOMMENDS** that Plaintiffs' motion for class certification **(Doc. #61)** be **GRANTED**.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. Procedural Background

Plaintiffs filed their complaint in this action on March 31, 2015. (Doc. #1). Discovery is now closed, and Plaintiffs[1] have moved to certify a class comprised of "all deaf and hard of hearing individuals in the custody of MDOC (whether now or in the future), who require hearing-related accommodations, including but not limited to interpreters, hearing devices, or other auxiliary aids or services, to communicate effectively and/or to access or participate in programs, services, or activities available to individuals in the custody of MDOC." (Doc. #61 at 3). The motion has been fully briefed (Docs. #70, #80), and the Court held oral argument on June 13, 2017.

### B. Factual Background

As mentioned above, Plaintiffs are deaf or hard of hearing individuals currently or formerly incarcerated at MDOC facilities. (Doc. # 61 at 3). McBride has been incarcerated at Women's Huron Valley Correctional Facility ("WHV") for the last seven years. (*Id.*, Ex. A Nos. 1-2). She has been completely deaf since birth and communicates primarily through American Sign Language ("ASL"). (*Id.*, No. 4; Ex. B). Williams has been incarcerated at Chippewa Correctional Facility ("URF") for the past four years. (*Id.* at Ex. C No. 1-2). He lost hearing in

---

[1] Because Wittman has been released from MDOC custody, Plaintiffs seek to proceed with a class represented only by McBride and Williams. (Doc. #80 at 10-11 n.2).

his left ear and wears a hearing aid. (*Id.*, Ex. D). Recently he has developed substantial hearing loss in his right ear. (*Id.*).

Plaintiffs contend that the "MDOC does not have adequate policies, procedures, or practices to provide system-wide accommodation for deaf and hard of hearing prisoners." (*Id.* at 12). Plaintiffs identify five areas in which the MDOC fails to reasonably accommodate the class members.

### i. *Identification and Classification of Deaf and Hard of Hearing Prisoners*

Plaintiffs first argue that the MDOC has failed to establish standard policies or procedures for identifying deaf and hard of hearing prisoners, and has never undertaken any systematic effort to identify which prisoners in its custody were deaf and hard of hearing and at which facilities they were housed. According to Plaintiffs, the MDOC created its first list of deaf and hard of hearing prisoners in 2015 in response to this litigation. Specifically, Plaintiffs contend that about a year after they filed the complaint, the MDOC issued a one-page document called "Guidelines for Hearing Impaired Accommodations and Classification" which, for the first time, established MDOC guidelines for identifying deaf and hard of hearing prisoners and classifying their degree of hearing loss. Plaintiffs argue that this guidance is insufficient. According to Plaintiffs, the document contains "no detail on appropriate accommodations for deaf and hard of hearing prisoners," besides a "single sentence specifying that *one* single hearing aid 'will be issued for prisoners with deficit in *both* ears of 26 decibels or greater.'" (Doc. #61 at 13) (emphasis in original).

Further, although the MDOC reportedly has six facilities designated to house hearing-impaired prisoners, Plaintiffs contend that some inmates with "severe and profound" hearing loss are nevertheless housed at facilities not designated on the health care grid to house such

3

prisoners.  (*Id.*, Ex. L (identifying alleged deaf and hard of hearing prisoners housed in at least eight different undesignated facilities), Ex. M at 60:6–8 (Slagter 30(b)(6) dep.), Ex. N at 82:9–16 (Gilbert 30(b)(6) dep.) (noting that the MDOC transferred 26 prisoners from non-designated facilities to designated facilities in May 2016).  Lastly, Plaintiffs assert that the MDOC has failed to establish any standards for the accommodations necessary to appropriately house deaf or hard of hearing prisoners.  (*Id.*, Ex. M at 34:9–15).

### ii. *Telecommunications Services and Hearing Devices*

Plaintiffs next allege that the MDOC has not installed videophones at any of their facilities to enable deaf or hard of hearing prisoners to communicate with persons outside of the prison using sign language, despite the MDOC's concession that such video communication can be made available at no cost to the MDOC.  (*Id.*, Ex. O at 12:22–13:1 (Slagter 30(b)(6) dep.), Ex. P at 236034).  According to Plaintiffs, the current telecommunications system, which uses teletypewriters, is obsolete because "the family members in the [hearing-impaired] community no longer have the machines."  (*Id.* at 15).  Per an internal email from the MDOC official primarily responsible for implementing technological solutions to accommodate deaf and hard of hearing prisoners, relying on this system would be akin to "sending someone a fax to their home versus using e-mail to communicate."  (*Id.*, Ex. Q).

Additionally, Plaintiffs find the MDOC's response to prisoners requiring hearing aids to be problematic.  As mentioned above, the one-page guidance memo issued in 2015 specifies that qualifying hearing-impaired inmates are entitled to *one* hearing aid, without regard to whether a prisoner suffers hearing loss in both ears.  Finally, the MDOC allegedly has failed to implement any policies or procedures for repairing or replacing hearing aid devices.  (*Id.*, Ex. G at 42:19–43:21).

### *iii.* *Access to Sign Language Interpreters*

Plaintiffs argue that the MDOC has no statewide policies or procedures setting any standards for ASL interpreter quality and performance, or for the minimum amount of time that interpreters must be made available to prisoners at MDOC facilities. Current policies and procedures also allegedly fail to specify the appropriate protocol for providing interpreter services for emergency medical care. Plaintiffs note that the MDOC had previously contracted with a single vendor, Linguistica International ("Linguistica"), to provide all ASL interpreter services at all MDOC prison facilities. Linguistica allegedly "frequently failed to provide interpreters when they were requested by MDOC." (*Id.* at 16). The MDOC terminated the contract with Linguistica on July 1, 2015, and has reportedly not secured the services of another statewide provider of interpreter services to fill the void. Instead, the MDOC has instructed individual facilities to retain their own interpreter service providers via purchase order.

Plaintiffs contend that this approach has resulted in service gaps – "in one case for eight months" – during which certain MDOC facilities allegedly had not retained any replacement providers of interpreter services. (*Id.* at 17). Because of the lack of interpreter services, Plaintiffs claim that they have been unable to consistently access educational opportunities, religious services, medical care, rehabilitative programs, employment opportunities, or to participate fully in disciplinary and parole hearings. (*Id.*, Ex. X (Grievance WHV-13-04-1591-12D1), Ex. Y (Grievance WHV-11-11-4704-06C), Ex. A at No. 3, Ex. E at No. 3).

### *iv.* *Notification of Prison Warnings and Announcements*

Plaintiffs also argue that the MDOC has no system-wide policies ensuring visual notification of announcements and safety alerts, such as fire alarms and alarms signaling emergency lockdowns, at every MDOC facility. (*Id.*, Ex. M at 112:10–113:17, 123:16–23).

5

Although some facilities have implemented "limited notification procedures," Plaintiffs argue that such procedures lack adequate detail about how to handle emergency situations. (*Id.* at 17). They also argue that the MDOC fails to provide "visual safety alerts in some facilities that are designated for deaf and hard of hearing prisoners." (*Id.* at 18, Ex. R. at No. 7, Ex. M at 110:14–111:17). Other alleged failures include inadequate visual notification systems for daily activities such as meal time and count time, and a lack of in-cell visual alarms or bed shakers to alert deaf or hard of hearing prisoners in the event of a fire or other exigent circumstances. (*Id.*, Ex. M at 111:1–111:9, Ex. R at No. 6, Ex. BB at 19-20).

> *v.* *Accommodation and Sensitivity Training for Corrections Staff*

Lastly, Plaintiffs contend that the MDOC failed to implement policies or procedures that address training related to the treatment of or accommodations for deaf and hard of hearing prisoners, despite receiving "numerous grievances about the mistreatment" of hearing-impaired inmates. (*Id.* at 18). According to Plaintiffs, MDOC does not provide system-wide training on: (a) the identification and classification of deaf and hard of hearing prisoners; (b) the use and maintenance of teletypewriters; (c) access to ASL interpreters; (d) visual systems notification for alarms and announcements; (e) the needs of deaf and hard of hearing prisoners in emergencies; and (f) sensitivity or awareness training about deaf and hard of hearing prisoners. (*Id.* at 19). Moreover, Plaintiffs contend that the MDOC does not provide any "facility-specific" training or education regarding the needs of deaf and hard of hearing prisoners. (*Id.*).

## III.  APPLICABLE LEGAL STANDARDS

To be certified, a class must satisfy "all four of the Rule 23(a) prerequisites – numerosity, commonality, typicality, and adequate representation – and fall within one of the three types of class actions" maintainable under Rule 23(b). *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532,

6

537 (6th Cir. 2012).  A failure on either front dooms the class.  *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011).  Although not reflected in the text of Rule 23, there is an implicit requirement that "the class definition be sufficiently definite so that it is administratively feasible" to determine the scope of the class.  *Young*, 693 F.3d at 537-38.

The plaintiffs must "affirmatively demonstrate" compliance with all conditions of class certification by proving "that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2013) (emphasis in original).  Ultimately, a "class may only be certified if, after rigorous analysis, the district court is satisfied that all prerequisites have been met."  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007).

## IV. ANALYSIS

### A. Plaintiffs Identify a Definable Class

"[B]efore a court may certify a class pursuant to Rule 23, 'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'"  *Young*, 693 F.3d 532, 537-38 (citation omitted).  Class definitions which are "amorphous" or "imprecise" do not meet this standard.  *Id.* at 537-38 (citation omitted).  *See also Avio, Inc. v. Alfoccino, Inc.* (*Avio II*), 311 F.R.D. 434, 441 (E.D. Mich. 2015) (granting class certification); *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (holding that "[t]he existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23").  Further, "[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.  In some circumstances, a reference to damages or injuries caused

7

by particular wrongful actions taken by the defendants will be sufficiently objective for proper inclusion in a class definition." *Young*, at 538-39 (citation omitted). Objective criteria are essential "so that class members may be identified without individualized fact finding." *Davidson v. Henkel Corp.*, 302 F.R.D. 427, 434 (E.D. Mich. 2014) (citing *In re OnStar Contract Litig.*, 278 F.R.D. 352, 373 (E.D. Mich. 2011)).

In this case, Plaintiffs satisfy this implicit threshold obligation by offering a class definition based on sufficiently objective criteria: MDOC inmates with hearing impairments requiring an accommodation. Applying this definition, class members are ascertainable without individualized fact finding. Thus, the Court turns to an analysis of Rule 23's express requirements.

### B.    Plaintiffs Satisfy the Rule 23(a) Requirements

Pursuant to Rule 23(a), a plaintiff seeking class certification must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy of representation"). *See* Fed. R. Civ. P. 23(a)(1)-(4). These four requirements effectively limit class claims to those fairly encompassed by the class representative's claim and ensure zealous advocacy on behalf of all class members. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013).

#### i.    *Numerosity*

Rule 23(a)(1) mandates that the class be "so numerous that joinder is impracticable." Fed. R. Civ. P. 23(a)(1). Because "[t]here is no strict numerical test for determining the

impracticability of joinder," *In re Am. Med. Sys.*, 75 F.3d at 1079, "[t]he numerosity requirement requires examination of the specific facts of each case." *Gen. Tel. Co. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330 (1980). The modern trend for meeting this factor is to require at least "21 [to] 40 class members." *Davidson*, 302 F.R.D. at 436 (internal citations omitted). In the Eastern District of Michigan, "it is generally accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement." *Id.* (citing *Crawford v. TRW Auto. U.S. LLC*, No. 06-14276, 2007 WL 851627, at *3 (E.D. Mich. Mar. 21, 2007). Here, the MDOC has identified 183 prisoners in its custody that suffer from a hearing impairment. (Doc. # 61, Ex. I). This clearly satisfies the numerosity requirement, and the MDOC does not argue otherwise. (Doc. #70 at 12).

### ii. Commonality

Next, class certification is appropriate only when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Although Rule 23(a)(2) refers to common questions of law or fact, in the plural, there need only be one question common to the class – though that question must be a 'common issue the resolution of which will advance the litigation.'" *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir.2003) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)) (en banc). The plaintiff must identify "a common contention . . . capable of classwide resolution – which means its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

Plaintiffs argue that the record evidence demonstrates the existence of several common questions of law and fact, including:

>(1) Have Defendants failed to provide adequate access to telecommunications services, hearing devices, ASL interpreters, visual notification systems, or other auxiliary aids for deaf and hard of hearing prisoners?
>
>(2) Have Defendants failed to provide deaf and hard of hearing prisoners with access to programs and services comparable to what is provided to hearing individuals in MDOC custody?
>
>(3) Have Defendants failed to provide sufficient training related to treatment and accommodation of deaf and hard of hearing prisoners?

(Doc. # 61 at 16).

In response, Defendants argue that commonality is lacking because the class members vary in (1) degree of hearing loss[2]; (2) accommodation needs; (3) programming needs; and (4) security level. (Doc. #70 at 14). From the premise that each deaf or hard of hearing inmate requires individualized accommodation, *i.e.*, that their impairments are not *identical*, Defendants reason that the proposed class members share *no* common contention of law or fact in their respective claims. This logic is critically flawed for a number of reasons.

First, Defendants' argument runs counter to a broad body of Sixth Circuit case law, which has consistently held that the commonality requirement demands that claims share only a single issue, not be identical. *See, e.g., Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) ("[Rule 23(a)(2)] simply requires *a* common question of law or fact.") (emphasis added); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 508-09 (6th Cir. 2015) ("[A]ll *Dukes* requires . . . is *a* common question.") (emphasis added); *Whirlpool*, 722 F.3d at 853 ("[T]here need be only one common question to certify a class."); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998) ("The interests and claims of the various plaintiffs need not be identical.").

---

[2] Defendants admit that the proposed class members all suffer from "some level of hearing loss." (Doc. #70 at 8).

10

Second, the Defendants' argument is at odds with rulings in prior analogous prisoner class action cases. As the undersigned explained in a 2012 Report and Recommendation to certify a class of inmates in a different action against the MDOC:

> "[C]ases involving enforcement of a uniform policy or procedure, including those relating to prisoners, are often approved as class actions because they involved questions of fact and law common to all members." [*Johnson v. Martin*, 2002 U.S. Dist. LEXIS 12550, at *14 (W.D. Mich. Apr. 29, 2002)] (citing *inter alia*, *Armstrong v. Davis*, 275 F.3d 849, 868-69 (9th Cir. 2001) ("in a civil-rights suit, [] commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members . . .")). *See also Jones v. Goord*, 190 F.R.D. 103, 111 (S.D.N.Y. 1999) ("The requirement that there be common questions of law and fact is satisfied in an action by prison inmates when 'inmates have a common interest in preventing the recurrence of the objectionable conduct.'") (citations omitted). As the court in [*Glover v. Johnson*, 85 F.R.D. 1 (E.D. Mich. 1977)] explained:
>
>> Clearly each individual member of the class has a unique situation and has been affected in diverse ways by the alleged discriminatory policy. That there are differences in situation and effect does not preclude a finding by this Court of commonality. That each class member's case is in other ways unique does not affect the commonality of the action, as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation. *Glover*, 85 F.R.D. at 4-5 [].

*Dowdy-El v. Caruso*, No. 06-11765, 2012 WL 6642793, at *4 (E.D. Mich. Aug. 15, 2012), *report and recommendation adopted*, No. 06-11765, 2012 WL 6642763 (E.D. Mich. Dec. 20, 2012).

Here, the mere fact that each potential class member may have a hearing impairment somewhat different than other class members does not negate the "focus" of this litigation: the MDOC's alleged failure to accommodate the needs of all of these proposed class members in terms of their ability to effectively communicate and participate in MDOC programs, services, and activities. The recent case of *Holmes v. Godinez*, 311 F.R.D. 177 (N.D. Ill. 2015), is

11

analogous and instructive on this point. In *Holmes*, the court certified a class of deaf or hard of hearing prisoners housed at multiple facilities across the State of Illinois because, "[d]espite factual variations in putative class members' situations, Plaintiffs' allegations regarding [the prison's] system-wide failures are the 'glue' that ties their claim together." *Id.* at 220. *See also Williams v. Conway*, 312 F.R.D. 248, 254 (N.D.N.Y. 2016) ("The jail's alleged failure to provide [inmate] class members with services for the deaf and hearing-impaired provides the basis for the putative class members' claims. Therefore, the 'plaintiffs' grievances share a common question of law or fact' and '[arise] from the same course of events[.]'") (internal citation omitted); *Glover*, 85 F.R.D. at 5 (certifying class of female prisoners, although "[c]learly each individual member of the class has a unique situation and has been affected in diverse ways by the alleged discriminatory policy"); *Parsons v. Ryan*, 289 F.R.D. 513, 521 (D. Ariz. 2013), *aff'd*, 754 F.3d 657 (9th Cir. 2014) ("It matters not that each inmate may suffer from different ailments or require individualized treatment because commonality may be met where 'the claims of every class member are based on a common legal theory, even though the factual circumstances differ for each member.'") (internal citation omitted).

Finally, Defendants' argument ignores that Plaintiffs' experts, Dr. Dennis Cokely and Richard Ray, identified several accommodations that would address the needs of all or most class members with "some level of hearing loss." (Doc. # 61, Ex. BB at 4-5, 26; Ex. FF at 3-6). For instance, the MDOC's adoption of a system-wide policy requiring adequate visual notification of announcements and emergency alerts would benefit all prisoners with a hearing deficit, particularly at night when prisoners typically do not wear hearing aids. (*Id.,* Ex. BB at 19-20; Ex. FF at 39). Also, implementation of uniform training guidelines for MDOC staff on how to interact with and treat deaf and hard of hearing prisoners – with a range of specific needs

12

– would do the same. (*Id.*, Ex. BB at 25; Ex. FF at 31-32). The conclusions of Dr. Cokely and Mr. Ray can be summarized generally as finding that the MDOC fails to provide hearing-impaired prisoners with the means to communicate effectively inside and outside of MDOC facilities, to receive important announcements, and to have equal access to facilities, programs, services, and activities. (*Id.*, Ex. BB at 4; Ex. FF. at 3). The MDOC has not offered rebuttal expert testimony, nor otherwise challenged the conclusions of Dr. Cokely and Mr. Ray.

In sum, although each proposed class member's specific impairment and accommodation needs may vary somewhat, they all allege that they have been similarly affected by a policy of the MDOC, which is the focus of this litigation. Accordingly, commonality exists here.

### *iii.* *Typicality*

The MDOC also contends that class certification is inappropriate under Rule 23(a)(3), which requires proof that Plaintiffs' claims are typical of the class members' claims. Fed. R. Civ. P. 23(a)(3). With the typicality requirement, the focus shifts from the characteristics of the class (*i.e.*, numerosity, commonality) to the relationship between the class and the named plaintiffs. This element is met if the class members' claims are "fairly encompassed by the named plaintiffs' claims." *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399). In other words, typicality exists where a claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members," and if the claims are based on the same legal theory. *Davidson*, 302 F.R.D. at 437 (quoting *Beattie*, 511 F.3d at 561).

As with the commonality analysis, the interests and claims of the various plaintiffs need not be identical to satisfy the typicality requirement. *Id.* (citing *Reese v. CNH America LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005)). The proper inquiry is "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the

13

court may properly attribute a collective nature to the challenged conduct." *Beattie*, 511 F.3d at 561.  Critically, a class representative's claim will be deemed typical even though "the evidence relevant to his or her claim varies from other class members, some class members would be subject to different defenses, and the members may have suffered varying levels of injury." *Reese*, 227 F.R.D. at 487-88 (citing *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884-85 (6th Cir. 1997)).

The concepts of commonality and typicality "tend to merge" in practice because both elements "serve as guideposts" in evaluating whether the claims are sufficiently interrelated so that "the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349-50 n.5.  Indeed, Defendants' typicality argument mirrors their commonality argument; here, Defendants argue that because "the named plaintiffs vary in terms of their degree of hearing loss, the accommodations they need, and the facilities' responses to their specific needs and/or complaints," their claims are not representative of the proposed class at large.  (Doc. #70 at 15).

For the same reasons discussed above – namely that the named Plaintiffs' claims arise from the same alleged policy and course of conduct as the claims of all others in the proposed class – the class members' claims are "fairly encompassed by the named plaintiffs' claims." Therefore, Plaintiffs satisfy the typicality requirement under Rule 23(a)(3).

### iv. *Adequacy of Representation*

The final Rule 23(a) prerequisite considers the adequacy of representation, and requires that the named plaintiffs "fairly and adequately protect the interests of the class" by having a "sufficient interest in the outcome [of the litigation] to ensure vigorous advocacy."  Fed. R. Civ. P. 23(a)(4).  The Sixth Circuit has held that there are two criteria for determining the adequacy of

representation: "(1) the representative must have common interests with unnamed members of the class; and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Salem v. Mich. Dept. of Corr.*, No. 13-14567, 2016 WL 7409953, at *6 (E.D. Mich. Dec. 22, 2016) (citing *In re Am. Med. Sys. Inc.*, 75 F.3d at 1083). At its core, this factor exists to confront "any concerns about the competency of class counsel and any conflicts of interest that may exist." *Whirlpool*, 722 F.3d at 853 (citing *Dukes*, 564 U.S. at 349-50 n.5).

Plaintiffs argue that these standards are satisfied because the named Plaintiffs' interests are consistent with – not antagonistic to – the interests of the class generally. (Doc. #61 at 20). While Defendants disagree, they do so based on the same logic which underpins their commonality and typicality arguments: differences among the individual members of the proposed class foreclose the possibility that the named Plaintiffs can "adequately protect" the interests of the unnamed class members. (Doc. #70 at 16). Again, this argument lacks merit. As Plaintiffs' experts conclude, the relief requested here would benefit all hearing-impaired inmates. Plaintiffs have carried their burden on this final Rule 23(a) factor because they possess the same interest in effective communication and access to MDOC programs and services as the other class members. They have also shown a desire and ability to vigorously prosecute this case as a class action through competent counsel.

### C. **Plaintiffs Satisfy the Rule 23(b) Requirements**

Upon finding that the Rule 23(a) factors are satisfied, the proposed class must also meet one of the criteria listed in Rule 23(b). In this case, Plaintiffs argue that they satisfy Rule 23(b)(2), which provides that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief

15

is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As the Supreme Court explained in *Dukes*, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Dukes*, 564 U.S. at 360 (emphasis in original). The requirements of Rule 23(b)(2) are satisfied when "the common claim is susceptible to a single proof and subject to a single injunctive remedy." *Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *4 (E.D. Mich. Aug. 2, 2010) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).

Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples of the types of cases with a class that satisfies Rule 23(b)(2). *See, e.g., Johnson*, 2002 U.S. Dist. LEXIS 12550, at *28; *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); Adv. Comm. Notes, 28 U.S.C. App., p. 697 (noting the relief offered under Rule 23(b)(2) is frequently sought in the civil rights setting). For essentially the same reasons germane to the Rule 23(a) analysis, the proposed class in this case also meets the standard imposed by Rule 23(b)(2); final injunctive or declaratory relief by this Court could resolve at least one issue common to each class member.

### V.     CONCLUSION

For the foregoing reasons, the court **RECOMMENDS** that Representative Plaintiffs' Motion for Class Certification **(Doc. #61)** be **GRANTED**.

Dated: June 30, 2017  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

16

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 30, 2017.

> s/Eddrey O. Butts
> EDDREY O. BUTTS
> Case Manager