# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

MARY ANN MCBRIDE, et al.,     )

          )     Civil Action No. 2:15-cv-11222

     *Plaintiffs*,     )

          )     Hon. Sean F. Cox

     v.     )     Mag. David R. Grand

          )

MICHIGAN DEPARTMENT     )

OF CORRECTIONS, et al.,     )

          )

     *Defendants*.     )

          )

---

## EXHIBIT A

[Proposed] Settlement Agreement

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| MARY ANN MCBRIDE, et al., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | Civil Action No. 2:15-cv-11222 |
| v. | ) | |
| | ) | Hon. Sean F. Cox |
| MICHIGAN DEPARTMENT | ) | Mag. David R. Grand |
| OF CORRECTIONS, et al., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## SETTLEMENT AGREEMENT

Abraham Singer (P23601)
Law Offices of Abraham
Singer PLLC
30833 Northwestern Hwy
Suite 120
Farmington Hills, MI 48334
(248) 626-8888
asinger@singerpllc.com

Elliot M. Mincberg (of counsel)
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036
(202) 319-1000
elliot_mincberg@washlaw.org

Andrew D. Lazerow
Stephen C. Bartenstein
Philip J. Levitz
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
alazerow@cov.com
sbartenstein@cov.com
plevitz@cov.com

Chris E. Davis (P52159)
Mark A. Cody (P42695)
Michigan Protection and
Advocacy Service, Inc.
4095 Legacy Parkway, Ste 500
Lansing, MI 48911
(517) 487-1755
cdavis@mpas.org
mcody@mpas.org

Phoebe Yu (of counsel)
Brian Kempfer (of counsel)
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
pyu@cov.com
bkempfer@cov.com

*Attorneys for Plaintiffs*

Jeanmarie Miller (P44446)
James E. Long (P53251)
Allan J. Soros (P43702)
Assistant Attorneys General
MI Dept of Attorney General
Civil Litigation, Employment &
Elections Division
P.O. Box 30736
Lansing, MI 48909
(517) 373-6434

*Attorneys for Defendants*

## I.   INTRODUCTION

The Plaintiffs, Mary McBride, et al., and the Defendants, the Michigan Department of Corrections, et al. enter into this Settlement Agreement ("Agreement") in order to settle the litigation captioned *McBride et al. v. Michigan Department of Corrections et al.*, No. 2:15-cv-11222 (E.D. Mich.).  The Parties agree to comply with the following terms.  The Agreement is enforceable in federal court.

The Parties hereby stipulate and agree as follows:

**WHEREAS** Plaintiffs are deaf and hard of hearing individuals in the custody of the MDOC (whether now or in the future), who require hearing-related accommodations, including but not limited to interpreters, hearing devices, or other auxiliary aids or services, to communicate effectively and/or to access or participate in programs, services, or activities available to individuals in the custody of the MDOC;

**WHEREAS** Plaintiffs have filed a lawsuit against the Defendants in the United States District Court for the Eastern District of Michigan, styled *McBride et al. v. MDOC et al.*, No. 2:15-cv-11222, claiming violations of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*, and the U.S. Constitution, based upon Defendants' failure to provide adequate assistance required by prisoners who are deaf and/or hard of hearing to effectively communicate and participate in services, programs, and activities offered by the Defendants;

**WHEREAS** on March 9, 2018, the Court issued its Opinion and Order Adopting 2/8/18 Report and Recommendation (Doc. # 99), granting in part Plaintiffs' motion for summary judgment and ruling that Defendants have violated the Americans with Disabilities Act and Rehabilitation Act, and ordering the MDOC to implement specified relief;

**WHEREAS** the Defendants have denied and continue to deny such violations;

**WHEREAS** the Parties desire, through this Agreement, to resolve and settle the litigation without the costs and burdens associated with further litigation with respect to the claims and defenses raised in the litigation;

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and which consideration includes, but is not limited to, the mutual promises and covenants contained herein, the Parties hereby agree to be bound as follows:

## II.   DEFINITIONS

1. "ADA" means the Americans with Disabilities Act, codified at 42 U.S.C. § 12101 et seq.

2. "Auxiliary Aids and Services" include, but are not limited to, "Qualified Interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments," 42 U.S.C. § 12103, such as hearing aids, computer-aided transcription services, assistive listening systems, closed caption decoders, open and closed captioning, "TDDs" or "TTYs" as defined below, videotext displays, written materials (*see* 28 C.F.R. § 35.104); as well as Videophones, access to telephone relay services, and visual alert or alarm systems.

3. "Deaf and/or Hard of Hearing Prisoners" means deaf and hard of hearing individuals incarcerated in a MDOC Facility (whether now or in the future), who require any Auxiliary Aids and Services to communicate effectively and/or to access or participate in programs, services, or activities available to individuals in the custody of the MDOC.

4. "Defendants" means MDOC; Heidi Washington, in her official capacity as Director of the Michigan Department of Corrections; Ken McKee, in his official capacity as Deputy Director of the Correctional Facilities Administration; Shawn Brewer, in his official capacity as Warden of the Women's Huron Valley Correctional Facility; Connie Horton, in her official capacity as Warden of the Chippewa Correctional Facility; and Shane Jackson, in his official capacity as Warden of the Carson City Correctional Facility.

5. "Designated Facility" means a MDOC Facility designated to house Deaf and/or Hard of Hearing Prisoners and required to have available the Auxiliary Aids and Services for Deaf and/or Hard of Hearing Prisoners specified under this Agreement.

6.  "Effective Communication" and "Effectively Communicate" means communication with Deaf and/or Hard of Hearing Prisoners that is substantially as effective as communication with the general Prisoner population (*see* 28 C.F.R. § 35.160(a)) and will, when necessary, include the provision of appropriate Auxiliary Aids and Services. Effective Communication affords Deaf and/or Hard of Hearing Prisoners an opportunity to participate in, and enjoy the benefits of, the MDOC's services, programs, or activities in a way that is substantially equal to the opportunity provided to Prisoners who are not Deaf and/or Hard of Hearing.

7.  "Effective Date" means the date upon which the Court approves this Agreement.

8.  "Prisoner" means any person under the jurisdiction of the MDOC and currently incarcerated in a MDOC Facility.

9.  "MDOC" means Michigan Department of Corrections.

10. "Personnel" mean all employees, contractors, and other staff of the MDOC whose job responsibilities entail interaction with Deaf and/or Hard of Hearing Prisoners, and the supervisors of those Personnel.

11. "MDOC Facility" means any facility owned by the MDOC for the care and custody of Prisoners, including but not limited to Alger Correctional Facility (LMF), Baraga Correctional Facility (AMF), Bellamy Creek Correctional Facility (IBC), Carson City Correctional Facility (DRF), Central Michigan Correctional Facility (STF), Charles Egeler Reception & Guidance Center (RGC), Chippewa Correctional Facility (URF), Cooper Street Correctional Facility (JCS), Detroit Reentry Center (DRC), Duane L. Waters Health Center (DWH), Earnest C. Brooks Correctional Facility (LRF), G. Robert Cotton Correctional Facility (JCF), Gus Harrison Correctional Facility (ARF), Ionia Correctional Facility (ICF), Kinross Correctional Facility (KCF), Lakeland Correctional Facility (LCF), Macomb Correctional Facility (MRF), Marquette Branch Prison (MBP), Michigan Reformatory (RMI), Muskegon Correctional Facility (MCF), Newberry Correctional Facility (NCF), Oaks Correctional Facility (ECF), Ojibway Correctional Facility (OCF), Parnall Correctional Facility (SMT), Richard A. Handlon Correctional Facility (MTU), Saginaw Correctional Facility (SRF),

Special Alternative Incarceration Facility (SAI), St. Louis Correctional Facility (SLF), Thumb Correctional Facility (TCF), Women's Huron Valley Correctional Facility (WHV), and Woodland Center Correctional Facility (WCC).

12. "Off-site Medical Care" means medical care that is provided at a location not owned or operated by the MDOC.

13. "On-site Medical Care" means medical care that is provided at a MDOC Facility, including medical care provided by third parties in facilities owned or operated by the MDOC.

14. "Parties" means, for the purposes of this Agreement, the Plaintiffs and the MDOC.

15. "Plaintiffs" means, for purposes of this Agreement, the class certified on July 20, 2017 by order of U.S. District Court Judge Sean F. Cox, consisting of "all Deaf and/or Hard of Hearing individuals in the custody of the MDOC (whether now or in the future), who require hearing related accommodations, including but not limited to interpreters, hearing devices, or other auxiliary aids or services, to communicate effectively and/or to access or participate in programs, services, or activities available to individuals in the custody of the MDOC."

16. "Plaintiffs' Counsel" means attorneys-of-record for Plaintiffs in *McBride et al. v. MDOC et al.*, No. 2:15-cv-11222 (E.D. Mich.). The current attorneys-of-record are Covington & Burling LLP, Law Offices of Abraham Singer PLLC, Michigan Protection and Advocacy Service, Inc., and Washington Lawyers' Committee for Civil Rights and Urban Affairs.

17. "Qualified Interpreter" means a person who is able to interpret effectively, accurately, and impartially, both receptively and expressively, with an individual Deaf and/or Hard of Hearing Prisoner using any necessary specialized vocabulary. *See* 28 C.F.R. § 35.104. A Qualified Interpreter must hold a valid certification from the National Registry of Interpreters for the Deaf or the National Association of the Deaf. Another MDOC prisoner shall not be considered a Qualified Interpreter.

A Qualified Interpreter may be provided by the MDOC either in person, or via video remote interpreting, videoconferencing, or other similar means that provide Effective Communication.

18. "Section 504" means Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 701 et seq. (2014).

19. "Settlement Monitor" means Michael K. Brady of Sabot Consulting.

20. "TTYs" or "TDDs" means teletypewriters or telecommunications devices for the Deaf, which are devices used with a telephone to communicate with persons who are Deaf by typing and reading communications.

21. "Video Remote Interpreting" or "VRI" means a video-telecommunication interpreting service, which uses Qualified Interpreters.

22. "Video Relay Services" means a form of Telecommunications Relay Service that enables persons with hearing disabilities who use American Sign Language to communicate with voice telephone users through video equipment.

23. "Videophone" means a telephone with a camera and screen for visual, real-time communications.

## III. GENERAL POLICIES

### A. Non-discrimination Based on Disability

The MDOC shall ensure that Deaf and/or Hard of Hearing Prisoners have full and equal access to the same programs, activities, services and accommodations available to non-Deaf and/or Hard of Hearing Prisoners.

### B. ADA Coordinators and Supervisor

No later than sixty (60) days after the Effective Date of this Agreement, the MDOC shall assign a staff member at each MDOC Facility with the title, duties, and responsibilities of Worksite Offender ADA Coordinator. The MDOC shall maintain ADA Coordinator positions with responsibilities for each MDOC

Facility.  The Worksite Offender ADA Coordinator shall be trained on the implementation of the requirements of federal and state law regarding the contents of this Agreement and the MDOC's obligations to provide full and equal access to its programs, activities, services, and accommodations to Deaf and Hard of Hearing Prisoners.

The MDOC has and shall maintain a designated Statewide Offender ADA Coordinator at its central headquarters.  The Statewide Offender ADA Supervisor and/or his/her designee shall oversee and supervise the Worksite Offender ADA Coordinators in their implementation of the requirements under this Agreement.

The contact information of each Worksite Offender ADA Coordinator shall be communicated to the Settlement Monitor and all Deaf and/or Hard of Hearing Prisoners incarcerated in the respective MDOC Facility and shall also be prominently posted in a secure area in any housing unit in which Deaf and/or Hard of Hearing Prisoners are held.

As set forth in MDOC P.D. 04.06.155 "Offenders with Disabilities," ADA Coordinators shall assist with providing, coordinating, and overseeing Auxiliary Aids and Services for Deaf and/or Hard of Hearing Prisoners.  The Worksite Offender ADA Coordinators shall be provided with and responsible for knowing the contents of this Agreement and shall assist with implementing this Agreement. The ADA Coordinators shall be available to assist Deaf and/or Hard of Hearing Prisoners in learning about the resources available to them and training in the use of Auxiliary Aids and Services.  If necessary, the Worksite Offender ADA Coordinators will be assisted by a Qualified Interpreter in carrying out these responsibilities.

## IV.    INITIAL CLASSIFICATION, ASSESSMENT, AND ASSIGNMENT

### A.    General Policy

The MDOC shall Effectively Communicate with Deaf and/or Hard of Hearing Prisoners at initial intake, assessment, and classification.  The purpose is to facilitate communication between the Deaf and/or Hard of Hearing Prisoner and Personnel (or other persons) responsible for medical, psychological, and educational testing and evaluation, as well as to help provide an explanation of prison policies and procedures, including Prisoner discipline, grievances, and how to utilize the TTY/TDD, Videophone, and other Auxiliary Aids and Services.

### B. Hearing Assessment

During initial intake and within 7 days of entering the MDOC prison system, every prisoner with a perceived or reported (including self-reported) hearing deficit shall receive an initial hearing assessment consistent with medical standards. If there is indication of a potential hearing deficit, the prisoner shall be referred to a professionally accredited audiologist to perform a comprehensive hearing assessment. These prisoners shall be housed in a Designated facility (barring any medical, security or programming needs requiring an alternative housing arrangement) pending this assessment. If medical Personnel determine that a Prisoner is Deaf and/or Hard of Hearing, medical Personnel shall note the disability and comply with MDOC P.D. 04.06.160 "Medical Details and Special Accommodation Notices." Any Deaf and/or Hard of Hearing Prisoner who was not assessed according to the requirements of this paragraph at his or her initial intake, or who requires reassessment due to perceived or reported changes in hearing, shall be assessed according to the requirements of this paragraph at the prisoner's annual physical exam.

### C. Auxiliary Aids and Services Assessment

After a determination is made that a Prisoner is Deaf and/or Hard of Hearing, medical Personnel, which may include a professionally accredited audiologist, shall determine if Auxiliary Aids and Services are medically necessary and facilitate ordering those aids and services as provided in MDOC P.D. 04.06.160 "Medical Details and Special Accommodation Notices." The Worksite Offender ADA Coordinator shall address all non-medical aids and services needed for the Deaf and/or Hard of Hearing Prisoner to Effectively Communicate.

If any Deaf and/or Hard of Hearing Prisoner indicates that he or she does not require any of the Auxiliary Aids and Services set forth in this Agreement, he or she shall sign a Waiver of Auxiliary Aids and Services and that document shall be kept in the Prisoner's medical file. No prisoner may be coerced, pressured, or compelled to sign a Waiver.

If a Prisoner is found to have a hearing impairment at intake or a later hearing assessment and refuses or does not request Auxiliary Aids and Services, but later believes that Auxiliary Aids and Services are necessary to ensure Effective Communication, he or she may submit a kite requesting Auxiliary Aids and Services. MDOC shall provide a Prisoner who was initially not found to have a hearing impairment with a hearing assessment if so ordered by medical Personnel.

If that individual is found to be Deaf and/or Hard of Hearing, MDOC shall follow the procedures set forth in MDOC P.D. 04.06.160.

### D. Ensuring Personnel Awareness Through Identification Cards

The MDOC shall take appropriate steps to ensure that all Personnel having regular contact with any Deaf and/or Hard of Hearing Prisoner are made aware of such Prisoner's need for Auxiliary Aids and Services. Upon identifying a Prisoner as Deaf and/or Hard of Hearing, the Deaf and/or Hard of Hearing Prisoner shall receive an identification (ID) card that clearly identifies him or her as a Deaf and/or Hard of Hearing Prisoner. The ID card shall signify to the Personnel that the Prisoner has been classified by MDOC as "hearing impaired" with or without deficit.

All Personnel having regular contact with any Deaf and/or Hard of Hearing Prisoner shall be trained on the meaning of the ID cards.

The MDOC shall post in a prominent location in all MDOC Facilities housing Deaf and/or Hard of Hearing Prisoners a notice clearly stating that the MDOC Facility houses Deaf and/or Hard of Hearing Prisoners and that the Deaf and/or Hard of Hearing Prisoners carry an ID card or other official indicator with them. The notice shall include a picture of the ID card and other official indicator carried by Deaf and/or Hard of Hearing Prisoners. The Notice shall also be posted in each housing unit where Deaf and/or Hard of Hearing Prisoners are held.

### E. Interpretation of Materials

Within thirty (30) days of the Effective Date of this Agreement, and upon any Deaf and/or Hard of Hearing Prisoner submitting a medical kite requesting Auxiliary Aids and Services, including but not limited to the services of a Qualified Interpreter, the MDOC shall provide the Deaf and/or Hard of Hearing Prisoner materials it provides to all Prisoners either:

- in a recorded video sign language interpreted format ("interpreted materials");[1] or

---

[1] If the MDOC chooses this option, the MDOC would also provide the equipment necessary to view the interpreted materials.

- closed captioning if the material is in video form and the prisoner can read and comprehend closed captioning; or

- by providing a Qualified Interpreter to permit the Deaf and/or Hard of Hearing Prisoner to understand the contents of the materials.

In providing these materials, the MDOC agrees to Effectively Communicate with the Deaf and/or Hard of Hearing Prisoner.  At the request of the Deaf and/or Hard of Hearing Prisoner, the MDOC shall provide that Deaf and/or Hard of Hearing Prisoner with a meaningful opportunity to meet with Personnel and a Qualified Interpreter to ask any questions regarding the written or interpreted materials.

### F.     Creation and Interpretation of Rights Materials

Within thirty (30) days of the Effective Date of this Agreement, the MDOC shall provide each Deaf and/or Hard of Hearing Prisoner with materials outlining the services available to them under this Agreement.  The MDOC shall create these materials using language designed to be accessible to each Deaf and/or Hard of Hearing Prisoner.  The MDOC shall provide these materials to Deaf and/or Hard of Hearing Prisoners with the orientation materials provided to all other Prisoners at initial intake, assessment, and classification.

The MDOC shall provide Deaf and/or Hard of Hearing Prisoners with these materials either:

- in a recorded video sign language interpreted format ("interpreted materials")[2]; or

- Closed captioning if the material is in video form and the prisoner can read and comprehend closed captioning; or

- by providing a Qualified Interpreter to interpret these materials to the Deaf and/or Hard of Hearing Prisoner.

---

[2] If the MDOC chooses this option, the MDOC would also provide the equipment necessary to view the interpreted materials.

## V.    HOUSING

### A.    General Policy

Except as otherwise set forth herein, the MDOC shall house Deaf and/or Hard of Hearing Prisoners at Designated Facilities.  The MDOC may house a Deaf and/or Hard of Hearing Prisoner at a non-Designated Facility when necessary to address safety or security issues, medical or programming needs, and unanticipated emergencies and in accordance with MDOC P.D. 04.06.155 "Offenders with Disabilities," P.D. 04.06.160 "Medical Details and Special Accommodation Notices," and P.D. 05.01.140 "Prisoner Placement and Transfer."  Within two (2) business days of a Deaf or Hard of Hearing Prisoner's transfer to a non-Designated Facility, the ADA Coordinator at the non-Designated Facility shall meet with the Prisoner to determine that Prisoner's accommodation needs and take all reasonable steps to ensure the Prisoner is provided appropriate accommodations to ensure substantially equal access to the MDOC's programs, activities, and services.  In the event the MDOC houses a Deaf or Hard of Hearing Prisoner at a non-Designated Facility, the MDOC shall provide the Settlement Monitor with the prisoner's name and prisoner number, and the reason for the housing assignment within two (2) business days of the transfer.  The MDOC shall consider advice from the Settlement Monitor regarding the housing assignment in light of legitimate safety or security concerns.

The MDOC's current Designated Facilities are DRC, DRF, JCF, SMT, SRF, TCF, WCC, and WHV.  Should the MDOC wish to designate any other facility as a Designated Facility, or de-designate a Designated Facility, it shall notify the Settlement Monitor before changing the facility's designation and consider advice from the Settlement Monitor regarding the proposed designation change.

Wherever a Deaf and/or Hard of Hearing Prisoner is housed, that Deaf and/or Hard of Hearing Prisoner retains all rights as required by this Agreement.

## VI.    PROVISION OF AUXILIARY AIDS AND SERVICES

### A.    General Policy

In order to ensure substantially equal access to the MDOC's programs, activities, and services, the MDOC shall provide appropriate Auxiliary Aids and Services to Deaf and/or Hard of Hearing Prisoners.  Substantial equality shall include providing appropriate auxiliary aids and services to Deaf and/or Hard of Hearing

Prisoners for MDOC core programs and services, including those set forth in section VII.A of this Agreement.

The MDOC shall provide instructions for the use of all Auxiliary Aids and Services to ensure Deaf and/or Hard of Hearing Prisoners' full use and enjoyment of the Auxiliary Aids and Services.

### B.    Medical Devices

Except as otherwise provided herein, all Auxiliary Aids and Services required by this Agreement which are deemed medically necessary by qualified medical Personnel, shall be provided promptly upon request, free of charge, to Deaf and/or Hard of Hearing Prisoners.

The prisoner shall be responsible for the cost of repair or replacement of damaged or lost Auxiliary Aids and Services that were issued by the MDOC except when verified that the damage or loss was not the fault of the prisoner (e.g. accident on an assignment, victim of an assault) or if only minor repair is necessary. If the prisoner does not have sufficient funds to pay the cost of repair or replacement, the cost shall be considered an institutional debt and collected as set forth in P.D. 04.02.105 "Prisoner Funds."

Healthcare at the facility where the Deaf or Hard of Hearing Prisoner is housed shall be responsible for facilitating the repair, replacement, and adjustment of medical devices such as hearing aids and shall be responsible for ensuring the delivery of the device. The MDOC will initiate a work order or other applicable mechanism for resolving the issue within two (2) business days of the complaint, and will attempt to resolve the complaint as promptly as possible. If there is a delay caused by third-party vendors outside of the MDOC's control, the MDOC will provide status updates to the Deaf and/or Hard of Hearing Prisoner until the issue is resolved. The MDOC shall pay for shipping costs associated with the repair and replacement of medical devices.

Prisoners who suffer bilateral hearing loss shall be offered hearing aids for both ears promptly upon request, and free of charge.

### C.    Maintenance of Non-Medical Auxiliary Aids and Services

The MDOC shall maintain all Auxiliary Aids and Services in its custody in good working condition.

13

The ADA Coordinator at the facility where the Deaf or Hard of Hearing Prisoner is housed shall be responsible to facilitate the repair, replacement, and adjustment of Auxiliary Aids and services. The MDOC shall pay for shipping costs associated with the repair and replacement of Auxiliary Aids and Services.

## VII. QUALIFIED SIGN LANGUAGE INTERPRETERS

### A. General Policy

The MDOC shall provide Qualified Interpreters as required by this Agreement. The MDOC agrees that Deaf and/or Hard of Hearing Prisoners in need of interpreter services shall receive a Qualified Interpreter to facilitate Effective Communication with that particular Deaf and/or Hard of Hearing Prisoner. At a minimum, the MDOC shall provide Deaf and/or Hard of Hearing Prisoners with access to Qualified Interpreters in the following circumstances:

- Communications to and interviews with prisoners regarding their healthcare, including dental, vision, audiological, and mental healthcare;

- Communications to and interviews with prisoners for Parole Board hearings, Parole Eligibility Report (PER) preparations, Parole Board interviews, parole violation hearings, and institutional Parole Agents/transitional programming;

- Disciplinary hearings, investigative interviews, and any other communications with Deaf and/or Hard of Hearings Prisoners as part of the MDOC's investigatory or disciplinary processes for alleged misconduct or violations of law, policy, or other requirements. This includes communications with Deaf and/or Hard of Hearing Prisoners who are suspected of, charged with, or witness to, disciplinary misconduct or violations;

- During Core programming as defined in Attachment A of MDOC P.D. 05.01.100;

- For administrative hearing proceedings, including required notices (e.g. Notice of Intent to Conduct an Administrative Hearing);

- Communications to and interviews with prisoners during the grievance process;

- Communications with legal writer if approved to receive services from the Legal Writer Program;

- During prisoner orientation at both intake and receiving facilities including any forms, multi-media, or educational information provided regarding the Prison Rape Elimination Act (PREA);

- Program classification and Security Classification Committee interviews;

- Any prison work/job-assignment related training for matters that are outside the routine day-to-day schedule;

- Formal meetings with facility administration or housing unit staff;

- Group religious services, whether organized by MDOC or by volunteers; and

- Individual (one-on-one) religious programs with clergy if requested by the prisoner and agreed to/approved by the qualified clergy that is to conduct the religious program, provided that the program is scheduled and coordinated by the facility chaplain or designee.

When a Deaf and/or Hard of Hearing Prisoner requests to attend a service or program set forth in this section VII.A, he/she may make a request for a Qualified Interpreter or Auxiliary Aids or Services as appropriate.

The MDOC shall be responsible for scheduling and overseeing the provision of Qualified Interpreters. Qualified Interpreters shall be made available either in-person or via a Video Remote Interpreter (VRI) Service. The MDOC shall provide an in-person Qualified Interpreter if requested by a prisoner and where a medical professional or Worksite Offender ADA Coordinator, in consultation with the prisoner, determines that the prisoner is unable to effectively communicate via VRI.

**B.     Other Means of Communication**

1.     General Policy

Personnel shall communicate with Deaf and/or Hard of Hearing Prisoners for such purposes, and to the same extent, as they would communicate with non-Deaf and/or Hard of Hearing Prisoners.

2.     Video Remote Interpreting (VRI) Service

The MDOC has begun the process of providing access to on-demand VRI service in each of its Designated Facilities.  When installed and operational, the on-demand VRI service will comport with the following standards unless it is not possible in an emergency situation:

- high quality, clear, delay-free full-motion video and audio over a high-speed Internet connection;

- a clear, sufficiently large, and sharply delineated picture of the Qualified Interpreter's and the Deaf individual's heads, arms, hands, and fingers, regardless of the body position of the Deaf individual; and

- voices being transmitted are clear and easily understood.

MDOC shall make all reasonable efforts to ensure that the on-demand VRI service is installed and operational at each Designated Facility by December 1, 2018.  If VRI service will not be available at any Designated Facility by December 1, 2018, MDOC shall notify the Settlement Monitor and explain the reason for the delay and the expected timeline for making VRI service available.

**C.     On-site Medical Care**

1.     General Policy

The MDOC shall provide Effective Communication for all scheduled appointments between Deaf and/or Hard of Hearing Prisoners and medical Personnel at MDOC facilities, including, but not limited to, review of medical history, medical appointments, follow up meetings or appointments, and treatment meetings.  The Parties agree that for many Deaf and/or Hard of Hearing Prisoners, a Qualified

Interpreter may be a necessary means of providing Effective Communication in these circumstances.

### 2. Informing Appropriate Medical Personnel

The MDOC shall ensure that all medical Personnel are made aware of a Prisoner's deafness or hearing disability by clearly noting the prisoner's disability in his/her medical file.

### 3. Scheduling Medical Appointments with Interpreters

Designated MDOC Personnel shall schedule all medical appointments requiring Qualified Interpreters. Appointments for Deaf and/or Hard of Hearing Prisoners requiring Qualified Interpreters shall be scheduled within the same time period from the initial request as those for non-Deaf and/or Hard of Hearing Prisoners.

### 4. Emergency Events

The MDOC shall provide a Qualified Interpreter via VRI service for use in unscheduled medical emergencies. If VRI services are not appropriate in the situation, MDOC Personnel shall make every reasonable effort in conjunction with medical Personnel to attempt to secure an in-person Qualified Interpreter as soon as possible. Lifesaving medical care should never be delayed because no interpretation services are available.

## D. Off-site Medical Care

When scheduling off-site medical care, the MDOC shall inform all off-site medical providers that a Deaf and/or Hard of Hearing Prisoner requiring a Qualified Interpreter or other Auxiliary Aids or Services shall be seeking medical care at a particular date and time.

In the case of an emergency, the MDOC shall, as soon as possible, inform an off-site medical provider that a Deaf and/or Hard of Hearing Prisoner requiring a Qualified Interpreter or other Auxiliary Aid or Service is being transported to the off-site medical provider. Notification shall include the Deaf and/or Hard of Hearing Prisoner's estimated time of arrival. The MDOC shall request that the off-site medical provider shall make available to the Deaf and/or Hard of Hearing Prisoner a Qualified Interpreter and/or other reasonable Auxiliary Aids or Services.

### E. Work Assignments

The MDOC shall provide opportunities for institutional work assignments that are consistent with the opportunities for the same assignments given to non-Deaf and/or Hard of Hearing Prisoners.

### F. Religious Services

No Deaf and/or Hard of Hearing Prisoner shall be required to attend a religious service where an interpreter is not provided in order to receive any religious meal, diet, or otherwise offered religious accommodation.

### G. Additional Communications

The MDOC shall provide Qualified Interpreters for any significant communications that are not specifically discussed in this Agreement and that would otherwise be communicated to a prisoner that is not Deaf or Hard of Hearing. A significant communication includes any communication for which (i) the risks of miscommunication or misunderstanding are significant; and (ii) the consequences of miscommunication/misunderstanding would have significant negative repercussions for the Deaf and/or Hard of Hearing Prisoner.

## VIII. DISCIPLINARY MATTERS

The MDOC must hold disciplinary hearings for Deaf and/or Hard of Hearing Prisoners within the same time frame as it holds disciplinary hearings for non-Deaf and/or Hard of Hearing Prisoners, in accordance with MDOC P.D. 03.03.105 "Prisoner Discipline."

## IX. NON-AUDITORY ALERT NOTIFICATIONS

### A. General Policy

Adequate non-auditory systems of notification must be put in place to ensure that Deaf and/or Hard of Hearing Prisoners incarcerated at MDOC facilities do not miss announcements, alarms, or any other information audibly conveyed from Personnel to the general prisoner population because of their disability.

**B.     Relaying Information**

The MDOC shall provide an effective non-auditory alert system that shall notify Deaf and/or Hard of Hearing Prisoners of events (including but not limited to announcements and visitations). The non-auditory alert system must effectively alert Deaf and/or Hard of Hearing Prisoners of such events in real time.

**C.     Non-Auditory Alarms and Emergency Evacuation**

The MDOC shall provide Deaf and/or Hard of Hearing Prisoners with an effective non-auditory alert system that shall advise them of an emergency evacuation or other emergency situation. Such non-auditory alert system may include in-person contact/communication between Personnel and the Deaf and/or Hard of Hearing Prisoner and must notify Deaf and/or Hard of Hearing Prisoners of emergencies in real-time. At a minimum, the non-auditory alert system shall include electronic messages through the Page Alert Broadcast System and flashing strobe lights. Further, the alarm and signaling notifications in each of the Designated Facilities shall comply with the National Fire Protection Association's (NFPA) Code 72 – "National Fire Alarm and Signaling Code," in effect at the time the alarm and signaling system was installed, including any provisions related to visible appliances and visible signaling for persons with hearing deficiencies. As fire alarm and signaling systems are updated and/or replaced, the MDOC will ensure that the updated or new system complies with the version of NFPA Code 72 adopted by the Michigan Department of Licensing and Regulatory Affairs / Bureau of Fire Services at the time of installation.

Personnel shall be responsible for the evacuation or safe relocation of Deaf and/or Hard of Hearing Prisoners during an emergency. Therefore, during emergencies, Personnel shall personally and effectively communicate adequate information about the emergency to Deaf and/or Hard of Hearing Prisoners.

**X.     TELECOMMUNICATIONS**

**A.     General Policy**

The MDOC shall provide Deaf and/or Hard of Hearing Prisoners with access to telecommunication devices that enable them to communicate with people outside of the MDOC in a manner that is substantially equivalent—in terms of the amount and quality of the information conveyed, as well as the expense incurred by the prisoner—to the communications that non-Deaf and/or Hard of Hearing Prisoners

have with people outside of the MDOC using traditional telecommunication devices such as telephones.  This provision does not apply to charges incurred by offenders' family and friends for use of third-party telecommunications providers.

**B.      Monitoring Communications**

Telephone and videophone calls between Deaf and/or Hard of Hearing Prisoners and individuals outside of the MDOC will be monitored as provided in MDOC Policy Directive 05.03.130.  The MDOC will monitor such calls in the same manner and to the same extent as any other prisoner call under PD 05.03.130 and shall not increase such monitoring solely because the call involves a Deaf and/or Hard of Hearing Prisoner.  Consistent with its policies, the MDOC reserves the right to monitor any recorded audio phone call, recorded Video Relay Service session, TTY call, or recorded person-to-person video-phone call, including any related video feed or transcript.

**C.      Additional Time for Communication**

The MDOC shall implement a policy that allows Deaf and/or Hard of Hearing Prisoners at least twice as many minutes to complete a TTY/TDD call or Videophone call relying on VRS services as the number of minutes afforded to non-Deaf and/or Hard of Hearing Prisoners to make calls using traditional telecommunication devices such as telephones.

**D.      Technology MDOC Shall Provide**

The MDOC shall make the following communications technologies available at its facilities where Deaf and/or Hard of Hearing Prisoners are incarcerated to enable effective communication between Deaf and/or Hard of Hearing Prisoners and people outside of MDOC facilities.  The MDOC shall consider adding additional equipment to reflect technological advances as they become available.  MDOC shall provide a list of available communications equipment to Deaf and/or Hard of Hearing Prisoners upon their arrival in MDOC custody.

**1.      TTY or TDD**

For every MDOC Facility at which any Deaf and/or Hard of Hearing Prisoner is incarcerated, access to the TTY/TDD shall be made available at times that the MDOC shall designate, but in no event shall TTY/TDD access for Deaf and/or Hard of Hearing Prisoners be less than equal to the access non-Deaf and/or Hard of

Hearing Prisoners have to conventional telephones.  TTY/TDDs shall be located in areas as accessible to Deaf and/or Hard of Hearing Prisoners as conventional telephones are accessible to non-Deaf and/or Hard of Hearing Prisoners. TTY/TDDs shall be available during the same days and hours as conventional telephones.  At each Designated Facility, if only one TTY/TDD is regularly utilized, the MDOC shall ensure that an alternate TTY or TDD unit is available for use when the regular TTY or TDD is broken or otherwise unavailable.  Deaf and/or Hard of Hearing Prisoners shall not be charged by the MDOC or a MDOC contractor any more than non-Deaf and/or Hard of Hearing Prisoners for the functionally equivalent use of TTY/TDD services, although the MDOC has no control over charges incurred by offenders' family and friends for using third-party telecommunications providers.

      2.     Telephone Relay Services

For every MDOC Facility at which any Deaf and/or Hard of Hearing Prisoner is incarcerated, the MDOC shall enable all TTYs and TDDs to access publicly available relay service phone numbers.

      3.     Videophones

Videophones shall be installed and accessible to Deaf and/or Hard of Hearing Prisoners at MDOC's Designated Facilities.  Access to the Videophones shall be made available at times that the MDOC shall designate, but no less than equal to the access non-Deaf and/or Hard of Hearing Prisoners have to conventional telephones.  Videophones shall be located in areas as accessible to Deaf and/or Hard of Hearing Prisoners as conventional telephones are accessible to non-Deaf and/or Hard of Hearing Prisoners, except that no videophones will be located outside.  Videophones shall be available during the same days and hours as conventional telephones.  Deaf and/or Hard of Hearing Prisoners shall not be charged any more than non-Deaf and/or Hard of Hearing Prisoners for the functionally equivalent use of videophone services.  Videophones shall allow voice carry-over features.

MDOC shall make all reasonable efforts to ensure that videophones are installed and operational at each Designated Facility by December 1, 2018.  If videophones will not be available at any Designated Facility by December 1, 2018, MDOC shall notify the Settlement Monitor and explain the reason for the delay and the expected timeline for making videophones available.

4.    Video Relay Services

VRS shall be installed and accessible to Deaf and/or Hard of Hearing Prisoners in Designated Facilities in accordance with the terms and conditions of the contract between the MDOC/DTMB and the successful vendor/contractor for the pending contract number 171-1800000001124.

MDOC shall make all reasonable efforts to ensure that VRS services are available at each Designated Facility by December 1, 2018. If VRS service will not be available at any Designated Facility by December 1, 2018, the MDOC shall notify the Settlement Monitor and explain the reason for the delay and the expected timeline for making VRS service available.

Consistent with the other telecommunications-related requirements set forth herein, Deaf and/or Hard of Hearing Prisoners shall be permitted to utilize videophones both to communicate directly with other persons outside of MDOC facilities using sign language (i.e., direct videophone to videophone communications that are not mediated through VRS), and to communicate with persons (including persons who do not know sign language) through the use of VRS services.

### E.    Responsibility for Maintaining Equipment and Training Staff

The MDOC shall ensure that the contract entered between the successful vendor/contractor for prisoner telephone services requires, as a term of the contract, that technology used to permit communication between Deaf and/or Hard of Hearing Prisoners and people outside of MDOC facilities is in good working order. Further, the MDOC shall ensure that all telecommunications and other equipment under the MDOC's control—as opposed to the contractor—that is used to accommodate Deaf and/or Hard of Hearing Prisoners is kept in good working order. Personnel shall attempt to resolve complaints about any malfunctioning equipment within a reasonable time of receiving that complaint. To the extent services, equipment, and resources that are outside the MDOC's control are involved (for example services or equipment provided by cable, telephone, utilities, or various other companies), the MDOC shall agree to notify those providers/companies of any problems and work with them expeditiously to resolve the problem.

The MDOC shall ensure that appropriately identified Personnel are adequately trained in the operation of the technology.

## XI.   MEDIA

The MDOC shall ensure that all audio-visual media purchased by the MDOC for Prisoner use in MDOC Facilities housing Deaf and/or Hard of Hearing Prisoners includes open- and closed-captioning.  Televisions purchased by the MDOC for Prisoner use shall support open- and closed-captioning.  Captioning shall be turned on and remain on at any Deaf and/or Hard of Hearing Prisoner's request.

## XII.   HAND RESTRAINTS

The MDOC shall implement an operating procedure relating to the handcuffing of Deaf inmates at MDOC Facilities that shall, whenever possible, and subject to safety and security considerations, permit Deaf inmates to use their hands for Effective Communication.  That procedure shall permit Personnel to consider the needs of a Deaf and/or Hard of Hearing Prisoners to use his or her hands for Effective Communication purposes.

## XIII.  MISCELLANEOUS DEVICES AND AIDS

A Deaf and/or Hard of Hearing Prisoner shall be allowed to purchase alerting devices, such as vibrating watches, and televisions that are offered through an MDOC approved vendor, to meet the particular needs of his or her disability.  The ADA Coordinator shall maintain written records of all Deaf and/or Hard of Hearing Prisoner requests for these devices and the dispositions of the requests.

The MDOC makes available to Deaf and/or Hard of Hearing Prisoners free of charge telephone amplification devices when such devices are needed by the prisoners to communicate effectively during standard telephone calls.

## XIV.  TRAINING

### A.     General Policy

The MDOC shall provide training as defined in Section XIV.B below to all MDOC officers and other Personnel who interact with the Prisoner population, all ADA Coordinators, and the ADA Supervisor. The MDOC shall incorporate this training into its regularly scheduled training for new and existing officers and other Personnel.  This training shall be included in MDOC's next scheduled training calendar, which is scheduled to begin October 1, 2018.

The MDOC shall provide training materials developed under Section XIV of this Agreement to the Settlement Monitor for review and comment prior to the first training session.  The MDOC shall consider any reasonable advice from the Settlement Monitor regarding the training.  Within 30 days following review and comment by the Settlement Monitor, the MDOC shall finalize its training module covering the areas set forth in Section XIV(B).  Within 90 days after the MDOC has finalized its training module, MDOC Personnel shall complete the training topics as set forth in Section XIV(B).

The MDOC shall review the training at least every two years to determine if modifications or updates to the training are needed to ensure consistency with applicable legal requirements.  Any time the MDOC updates the training, and during the course of the Settlement Monitor's appointment, the Settlement Monitor will be provided the updated training materials for review and comment prior to the first training session, and the MDOC shall consider advice from the Settlement Monitor regarding the training.

## B.    Personnel Training

By October 1, 2018, the MDOC shall develop its fiscal year 2019 training calendar, which shall require training MDOC Personnel on the following topics:

- best practices in communicating with deaf and/or hard of hearing individuals;

- the unique needs and problems encountered by deaf, late-deafened, and hard of hearing individuals;

- identification of communication needs of persons who are deaf and/or hard of hearing;

- the psychological implications of deafness and its relationship to interaction with hearing corrections Personnel;

- the proper use and role of Qualified Interpreters, and the circumstances when Qualified Interpreters must be made available;

- directions about using TTYs, TDDs, Videophones, VRI, the page alert system, and any other telecommunication equipment available

at the facility that facilitates communication with Deaf and/or Hard of Hearing Prisoners;

- the MDOC's anti-discrimination policy;

- all equipment, services, and accommodations available to Deaf and/or Hard of Hearing Prisoners; and

- the requirements of this Agreement.

## XV.  GRIEVANCES

Complaints concerning reasonable accommodations filed by a Deaf and/or Hard of Hearing Prisoner shall be handled in accordance with MDOC P.D. 04.06.155 "Offenders with Disabilities."

A written record of all Deaf and/or Hard of Hearing Prisoners' grievances (and any responses and outcomes) shall be maintained by the MDOC.  During the duration of the Settlement Monitor's appointment, the Settlement Monitor may request the records of any Deaf and/or Hard of Hearing Prisoner's grievances, and as long as the Deaf and/or Hard of Hearing Prisoner consents, a copy of that Deaf and/or Hard of Hearing Prisoner's grievance records shall be provided, free of charge, to the Settlement Monitor.

## XVI.  MONITORING AND COMPLIANCE

### A.  Policies and Procedures

The MDOC shall develop and implement system-wide policy directives and facility-specific operating procedures for each facility housing Deaf and/or Hard of Hearing Prisoners documenting in writing the processes and procedures required to satisfy the terms of this Agreement.  The MDOC will consult with the Settlement Monitor on the development of the policies and procedures, and will share copies of draft policies and procedures with the Settlement Monitor for review and feedback before finalizing the policies and procedures.  The MDOC shall consider advice from the Settlement Monitor regarding the policies and procedures.

**B.    ADA Coordinators Annual Audit**

The MDOC's appointed ADA Coordinators/Supervisors shall perform an annual audit of the MDOC's policies and procedures for compliance with the terms of this Agreement and other applicable federal and state laws.  A written report of the audit findings shall be presented to the Settlement Monitor.  This audit report shall consider, at a minimum:

- The location of the MDOC's Deaf and/or Hard of Hearing Prisoners, and whether all such prisoners are housed in Designated Facilities.  If any Deaf and/or Hard of Hearing Prisoners are not housed in Designated Facilities, the audit report shall explain why they are housed elsewhere, and whether such housing is consistent with the MDOC's requirements under this Agreement.

- The MDOC's compliance with its policies and procedures related to Deaf and/or Hard of Hearing Prisoners, including for:
  - Initial classification, assessment, and assignment of Deaf and/or Hard of Hearing Prisoners;
  - Providing Qualified Interpreters and other Auxiliary Aids and Services to Deaf and/or Hard of Hearing Prisoners;
  - Providing Deaf and/or Hard of Hearing Prisoners with access to telecommunications devices and services, including TTYs/TDDs, Telephone Relay Services, Videophones, and Video Relay Services; and
  - Providing Deaf and/or Hard of Prisoners with access to the types of non-auditory alert notifications required by this Agreement.

- The merits of grievances and/or other allegations of non-compliance by Deaf and/or Hard of Hearing Prisoners with the above-referenced policies and procedures, and remedial steps taken by the MDOC to correct established instances of non-compliance.

- Whether the MDOC's TTYs/TDDs, videophones, and non-auditory systems of notification for Deaf and/or Hard of Hearing Prisoners are in good working order at all Designated Facilities.

- Whether the MDOC is providing each of the types of training to its officers and other Personnel required by Section XIV, and Personnel participation in such trainings.

**C.    Plaintiffs' Counsels' Right of Access**

To the extent Plaintiffs' Counsel maintains a current or prospective attorney-client relationship with any Deaf and/or Hard of Hearing Prisoner, they shall be provided the same access to that Deaf and/or Hard of Hearing Prisoner and to the records relating to that Deaf and/or Hard of Hearing Prisoner, as any other attorney with a similar relationship to another non-Deaf and/or Hard of Hearing Prisoner.

**D.    The Settlement Monitor's Activities**

In addition to and without limiting the Settlement Monitor's activities and responsibilities specified elsewhere in this Agreement, on at least a six-month basis following the execution of this Agreement, the MDOC shall permit the Settlement Monitor:

- access to MDOC facilities that house Deaf and/or Hard of Hearing Prisoners or that the MDOC has identified to be designated to house Deaf and/or Hard of Hearing Prisoners, to evaluate efforts by the MDOC to provide Deaf and/or Hard of Hearing Prisoners with access to auxiliary aids and services, Qualified Interpreters, and non-auditory systems of notification;

- access to any medical records made during the preceding twelve (12) months or since the prior investigation, whichever is longer, provided the Deaf and/or Hard of Hearing Prisoner consents to such disclosure; and

- access to any non-security logs or other business records that the MDOC keeps in the regular course of business relating to Deaf and/or Hard of Hearing Prisoners generally, or any given Deaf and/or Hard of Hearing Prisoner in particular, prepared or updated during the preceding twelve (12) months or since the prior investigation, whichever is longer.

Deaf and/or Hard of Hearing Prisoners shall be provided with contact information for the Settlement Monitor, and shall be granted private access to the Settlement Monitor.  Depending on the preference of the Settlement Monitor, access shall be granted via videophone, TTY/TDD, or telephone, or through in-person visitation by the Settlement Monitor.

During the duration of the Settlement Monitor's appointment, the Settlement Monitor will issue semi-annual reports to the Court and the Parties detailing the Defendants' compliance with and implementation of this Agreement.

The Settlement Monitor's responsibilities shall continue for a period of two (2) years after the MDOC has implemented the terms of this Settlement Agreement, which include the installation and availability of Videophones, VRI, and a non-auditory alert system at all Designated Facilities, the adoption of required policies and/or procedures (consistent with Section XVI.A), the appointment of ADA Supervisor and Coordinators, and implementation of Personnel training (consistent with Section XIV). Subject to the Court's continuing oversight responsibilities under this Agreement, the Settlement Monitor's responsibilities will be discharged after this period if the Settlement Monitor issues written certification to the Court and the Parties that the MDOC is in substantial compliance with its obligations under this Settlement Agreement.

Covington & Burling LLP shall be responsible to pay all reasonable fees and expenses charged by the Settlement Monitor for his or her services from the attorneys' fees paid by the MDOC pursuant to Section XVII.C of this Agreement.

## XVII. RELEASE AND SETTLEMENT OF CLAIMS

### A.    Release

Plaintiffs hereby release and discharge Defendants, including their successors and assigns, of and from any claims or causes of action arising out of the matter described in the Plaintiffs' Complaint filed with the U.S. District Court for the Eastern District of Michigan (the "Court") in Case No. 2:15-cv-11222, through the period of the Settlement Monitor's appointment.

### B.    Dismissal

The Plaintiffs agree to dismiss with prejudice all claims of the Complaint in Case Number 2:15-cv-11222 subject to the continued enforcement powers of the Court and the Plaintiffs as set forth below in Section XVII.D.

The Parties agree that the Court shall retain jurisdiction over this Agreement as set out in Section XVII.D of this Agreement, below.

### C.    Attorneys' Fees, Costs, Disbursements and Expenses

In settlement of all of Plaintiffs' claims up to and including the submission of the Settlement Monitor's final report, including any claims for attorney fees and costs,

any disbursements and expenses, including expert fees incurred on behalf of Plaintiffs in this litigation, the Parties agree that within 30 days of the Effective Date, the MDOC shall pay $1,300,000 to Covington & Burling LLP, which shall equitably divide the payment with other Plaintiffs' Counsel.

### D.    Court Approval and Enforcement Powers

Upon execution of this Agreement, the Parties shall jointly move the Court for approval of this Agreement and dismissal of the claims in this action pursuant to Federal Rules of Civil Procedure 23(e) and 41(a).  This dismissal shall be with prejudice subject to the Court's ongoing authority to enforce the terms of this Settlement Agreement.

The Court will retain jurisdiction over this action, *McBride et al. v. MDOC et al.*, No. 2:15-cv-11222, during the period of the Settlement Monitor's term of appointment, and shall have the power to enforce all terms of this Agreement.

Approval of this Agreement by the Court is a condition precedent to the Agreement's effectiveness.

## XVIII.    MISCELLANEOUS PROVISIONS

### A.    Entire Agreement

This Agreement constitutes the entire Agreement between the Parties.  There were no inducements or representations leading to the execution of this document, except as stated within the document itself.

### B.    Binding

This Agreement is final and binding on the Parties and their successors in interest. Each Party has a duty to so inform any such successor in interest.

### C.    Non-Waiver

Failure by the Plaintiffs to seek enforcement of this Agreement pursuant to its terms with respect to any instance or provision shall not be construed as a waiver to such enforcement with regard to other instances and/or provisions.

**D.     Severability**

In the event that a court determines that any provision of this Agreement is unenforceable, such provision will be severed from this Agreement and all other provisions will remain valid and enforceable, provided however that if the severance of any such provision materially alters the rights and obligations of the Parties hereunder, the Parties will attempt, through reasonable, good faith negotiations, to agree upon such other amendments to this Agreement as may be necessary to restore the Parties as closely as possible to the relative rights and obligations initially intended by them hereunder.

Consenting parties:

For the Defendants:

Heidi E. Washington
Printed Name

_Heidi E. Washington_
Signature

10/1/18
Date

For the Plaintiffs:

ANDREW LAZEROW
Printed Name

_signature_
Signature

10/1/18
Date