UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY ANN MCBRIDE, et al.,

       Plaintiffs,                          Civil Action No. 15-11222
                                                    Honorable Sean F. Cox
v.                                                      Magistrate Judge David R. Grand

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

       Defendants.
_____/

**<u>OPINION AND ORDER SUSTAINING THE MDOC'S APPEAL OF SETTLEMENT MONITOR'S RECCOMENDATION REGARDING BRANDON RESCH (ECF No. 184)</u>**

      This is a class action brought on behalf of inmates within the Michigan Department of Corrections ("MDOC") who are deaf and/or hard of hearing. Following the Court's March 9, 2018 ruling that the MDOC had violated the Americans with Disabilities Act and Rehabilitation Act, granting partial summary judgment to the class Plaintiffs, and ordering certain relief, the parties reached a settlement, the terms of which were incorporated into a Settlement Agreement. One term provided for a Settlement Monitor to monitor the MDOC's compliance. Later, the parties entered a Stipulated Order that provided a mechanism by which class Plaintiffs could raise disputes related to "the implementation of the terms and conditions of the Settlement Agreement" with the Settlement Monitor, agreeing that any challenges of the Settlement Monitor's proposed resolution would be submitted to the undersigned for final resolution. Presently before the Court is one such dispute.

      Specifically, following execution of the Settlement Agreement, class member Brandon Resch, an MDOC inmate confined at the Carson City Correctional Facility, received three separate misconduct charges that he believes were processed in violation of the Settlement Agreement.

1

Resch invoked the Stipulated Order's procedures, and the Settlement Monitor recommended that each of the misconduct charges against Resch be dismissed, or alternatively, that Resch be provided new hearings on each of them, with the MDOC documenting that "effective communication" took place during the hearings. The MDOC appealed the Settlement Monitor's recommendation, and it is that "appeal" that is presently before this Court for resolution. (ECF No. 184.) Resch, through class counsel, filed a response (ECF No. 187), and the MDOC filed a reply (ECF No. 189.) For the reasons that follow, the Court will sustain the MDOC's appeal.

**Background**

*i.     The Litigation and Its Resolution*

In this class action, the plaintiffs are "all Deaf and/or Hard of Hearing individuals in the custody of the [Michigan Department of Corrections ("MDOC")] (whether now or in the future), who require hearing related accommodations, including but not limited to interpreters, hearing devices, or other auxiliary aids or services, to communicate effectively and/or to access or participate in programs, services, or activities available to individuals in the custody of the MDOC." On March 9, 2018, the Court issued an Opinion and Order granting in part the Plaintiffs' motion for summary judgment, and ruling that the MDOC (and certain of its officers) (collectively, the "Defendants") had violated the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12131 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* (ECF No. 99). The Court ordered the MDOC to provide certain specified relief, including:

  a) Make videophones available to all deaf and hard of hearing prisoners;

  b) Provide necessary auxiliary aids for all deaf and hard of hearing prisoners to participate equally in prison programs and services, including consistent access to ASL interpreters for all "high-stakes" interactions and programs, [] including religious services;

      c) Institute mandatory training for MDOC's correctional officers and staff on how to identify and appropriately interact with deaf and hard of hearing prisoners;

      d) Adopt effective and comprehensive policies and procedures in each of the above areas, including for appropriate compliance monitoring;

(*Id.*, PageID.4096-97).

The Court also ordered the parties to "meet and confer in an attempt to resolve any aspects of Plaintiffs' claims not disposed of by this order, and to agree on an appropriate consent order implementing the relief specified in Paragraph 1 above, and any other relief necessary to bring this action to a close." (*Id.*, PageID.4097). When the parties were unable to agree on the terms of a consent order, the Plaintiffs unilaterally moved the Court to order the parties to attend a settlement conference. (ECF No. 102). The undersigned held a settlement conference in this matter on June 4, 2018, which ultimately resulted in the parties filing a Joint Motion for Final Approval of Class Action Settlement, along with their Proposed Settlement Agreement (the "Settlement Agreement") on March 4, 2019. (ECF No. 118, 118-2). In executing the Settlement Agreement, the MDOC agreed to, among other things:

> (1) "ensure that Deaf and/or Hard of Hearing Prisoners have full and equal access to the same programs, activities, services and accommodations available to non-Deaf and/or Hard of Hearing Prisoners;"
>
> (2) ensure that MDOC officials are able to "Effectively Communicate with Deaf and/or Hard of Hearing Prisoners at initial intake, assessment, and classification," providing new MDOC inmates "an initial hearing assessment consistent with medical standards" during initial intake and within seven days of their entry into the MDOC;
>
> (3) provide "medical Personnel . . . to determine if Auxiliary Aids and Services are medically necessary" for any inmate determined to be Deaf and/or Hard of Hearing, and then "facilitate[ing] ordering those aids and services;"

> (4) house Deaf and/or Hard of Hearing Prisoners at "Designated Facilities," unless safety or security issues, medical or programming needs, and unanticipated emergencies required a different housing location; and
>
> (5) provide "Auxiliary Aids and Services required by [the] [Settlement] Agreement which are deemed medically necessary by qualified medical Personnel . . ." (ECF No. 118-2, PageID.4348-54).[1]

(ECF No. 118-2, PageID.4348-54.)

The Section entitled "Disciplinary Matters" simply requires the MDOC to "hold disciplinary hearings for Deaf and/or Hard of Hearing Prisoners within the same time frame as it holds disciplinary hearings for non-Deaf and/or Hard of Hearing Prisoners . . ." (*Id.*, PageID.4359.) However, if an inmate requests sign language interpreter services to aid him during such a hearing, the MDOC must provide a qualified interpreter. (*Id.*, PageID.4355.)

The Settlement Agreement also provided that an experienced "Settlement Monitor" – Michael K. Brady – would be involved in ensuring that the MDOC had complied with its obligations under the Settlement Agreement. It provided that "Deaf and/or Hard of Hearing Prisoners shall be provided with contact information for the Settlement Monitor, and shall be granted private access to [him]." (*Id.*, PageID.4368). It further provided that "the Settlement Monitor will issue semi-annual reports to the Court and the Parties detailing the Defendants' compliance with and implementation of this Agreement." (*Id.*). The parties agreed that "the Court

---

[1] Notably, whether due to oversight, a lack of appreciation of the issue by the parties, or some other reason, the enumerated list did not include an obligation that the MDOC document that effective communication took place during the referenced "high stakes" interactions. However, perhaps in recognition of the benefits such documentation might provide, on November 2, 2020, the MDOC adopted Policy Directive 04.05.156, ¶ DD.3, which provides, "Any person-to-person communication . . . [in a variety of circumstances, including misconduct proceedings] with a prisoner who has a H-accommodation [hearing impairment requiring an aid] *shall be documented* as set forth in this paragraph." (ECF No. 187-2, PageID.5006-07) (emphasis added.)

4

will retain jurisdiction over this action [] during the period of the Settlement Monitor's term of appointment, and shall have the power to enforce all terms of this Agreement." (*Id.*, PageID.4370).

The Honorable Sean F. Cox held a fairness hearing on the joint motion, and, on March 29, 2019, entered an Order granting it. (ECF No. 120). The Order specified that, pursuant to the Settlement Agreement's terms, the Court would "retain[] jurisdiction over this action to enforce the terms of the [Settlement] Agreement as needed." (*Id.*, PageID.4465).

    ii.    *Resolution of Complaints Regarding MDOC Compliance with the Settlement Agreement*

On March 3, 2020, the Court entered a Stipulated Order regarding a "process for post-judgment complaints initiated by class members against Defendants **as it pertains to the implementation of the terms and conditions of the Settlement Agreement**." (ECF No. 150, the "Stipulated Order") (emphasis added). The Stipulated Order provides that a complaining class member shall submit his complaint to the Settlement Monitor, Michael Brady, and that Mr. Brady will gather information from all sides and provide the parties with a "recommendation" for resolution of the complaint. The Stipulated Order provides, "[i]f both parties agree to the Settlement Monitor's recommendation, the MDOC shall be obligated to take any necessary steps to promptly implement the recommendation." (*Id.*, PageID.4715). It also provides, in pertinent part:

> m.    If the class member's complaint specifically addresses the implementation of the terms and conditions of the Settlement Agreement and there is a disagreement with the Settlement Monitor's recommendation by either of the parties, the objecting party may appeal the Settlement Monitor's recommendation to Magistrate Judge David R. Grand. Magistrate Grand will render a decision regarding the dispute. The parties agree that Magistrate Judge Grand's decision will be final and binding upon the parties with respect to the Settlement Agreement and may not be objected to or further appealed.

5

> n. The above described mediation process only pertains to the implementation of the terms and conditions of the Settlement Agreement. Any requests for fees and/or money damages by the class member must be made through an independent cause of action.

(*Id.*, PageID.4715-16).

Finally, the Stipulated Order contains what the Court will refer to as its "Exhaustion Provision," which states:

> The process contained in this Stipulated Order is not meant in any way to be a waiver of any administrative processes contained in any Michigan Department of Corrections (MDOC) policy directives, the Federal Prison Litigation Reform Act (42 U.S.C. § 1997e), and/or the Michigan Prison Litigation Reform Act (MCLA 600.5501 et seq.). Class members are reminded of their obligations to exhaust their administrative remedies to the extent required by law before seeking any remedies through the court system. (For the avoidance of doubt, the process described [above] does not require exhaustion of administrative remedies before submitting a complaint to the Settlement Monitor).

(*Id.*, PageID.4712-13).

### iii. The Disputed Convictions

Brandon Resch is a class member who, at all pertinent times, was incarcerated at the Carson City Correctional Facility. Following the parties' execution of the Settlement Agreement, Resch submitted a number of written complaints to the Settlement Monitor about various issues, including the following three misconduct charges for which he was convicted.

#### a. April 22, 2019 – Disobeying a Direct Order

According to a misconduct report, on April 22, 2019, a corrections officer gave Resch a "direct order to step back," and "Resch replied 'to where[?]" without moving. (ECF No. 184-6, PageID.4933). A record of the hearing indicates that Resch pleaded not guilty. It also indicates that Resch "state[d], 'I was talking to the Food Service Worker about not getting a meal and the

6

officer walked [sic] by and said something. I honestly did not hear him. Once I heard him you can see on the camera that I backed up." (*Id.*, PageID.4932).

The hearing officer found Resch guilty of disobeying a direct order. In doing so, the hearing officer noted that the misconduct report was clear and credible, and that the reporting officer had instructed [Resch] to "step back, to which [Resch] said 'where[?]. [Resch's] response shows that the prisoner heard the officer's order." (*Id.*) As a result, Resch received 2 days of "top-lock," which means he was confined to his bunk area for that period of time. (ECF No. 187, PageID.5023).

### b. *August 14, 2019 – Fighting*

A corrections officer filed a misconduct report which indicates that on August 14, 2019, he "directly observed Inmate Resch . . . yelling at prisoner Joyce []. Resch and Joyce then began exchanging closed fist blows to upper body and head area. Verbal direction was given to stop fighting and both prisoners complied . . ." (ECF No. 184-6, PageID.4935). Accordingly Resch was charged with fighting. Resch fully participated at his hearing on this matter. The charge was reviewed with him, and he refused the assistance of a hearing investigator. (ECF No. 184-6, PageID.4934). Resch submitted a two-page statement claiming that Joyce hit him first and that "he hit Joyce back to defend himself . . ." (*Id.*) However, the hearing officer found that "Resch's statement is not believed because it is contradicted by the video which showed him hitting Joyce first." (*Id.*) Thus, the charge was upheld and Resch received 10 days of detention.

### c. *August 14, 2019 – Out of Place*

Also on August 14, 2019, at "count time," Resch was accused of being "out of place." According to the misconduct report, Resch was sitting on a chair next to the desk in his cell. (ECF No. 184-6, PageID.4937). The officer called five minutes to count, and "the count light was on."

(*Id.*)  However, at the specific "count time," Resch was not on his bunk as he was required to be. (*Id.*, PageID.4936).  Resch does not challenge the substance of this charge.  Instead, he claims that he "was never reviewed on the misconduct," meaning that he did not have an opportunity to discuss the charge with an officer 24 hours before his hearing.  (*Id.*, PageID.4937).  Resch pled not guilty at the hearing, with his only argument being that his due process rights were violated because the reviewing Officer didn't review the charge with him.  The reviewing Officer indicated that he had come to Resch's cell to review the charge, but that Resch had "refused to come to the door to hear a review of his misconduct."  The hearing officer reviewed video evidence, noting that the reviewing Officer had, in fact, come to Resch's cell and "attempted to review the misconduct [charge]" with him, even knocking on the cell. (*Id.*)  He also left a copy of the charge for Resch. Resch was found guilty and he received 5 days of top-lock and loss of privileges.

    iv.    *Settlement Monitor Recommendations*

Resch filed complaints with the Settlement Monitor about each of the foregoing convictions.  After reviewing the matters pursuant to the procedures outlined in the stipulated Order, the Settlement Monitor first provided his analysis of the issues.  The Settlement Monitor seemed to focus largely on the fact that the MDOC hearing officers failed to "document effective communication" during the hearings and failed to explicitly state that they had considered Resch's hearing impairment during the proceedings.  For example, as to Resch's conviction for out of place, in which he only challenges the fact that the charge was not reviewed with him prior to the hearing, the Settlement Monitor concluded that "MDOC staff made reasonable steps to conduct the misconduct review,"[2] they "should have *better documented the steps* taken to communicate

---

[2] The Court notes that this includes video showing the reviewing officer approach and knock on Resch's cell while he was inside so they could discuss the charge.  In other words, the Settlement

8

(effectively communicate with Mr. Resch)." (ECF No. 184-8, PageID.4958) (parenthetical in original) (emphasis added). As to his conviction for failure to obey a direct order conviction, the Settlement Monitor notes, "Neither the misconduct report or hearing report contains any acknowledgment or language relative to Mr. Resch's hearing impairment or effective communication during the incident or during the misconduct hearing itself." (*Id.*) And, as to his fighting conviction, the Settlement Monitor explained, "Although the Settlement Monitor does not believe that Mr. Resch's hearing impairment played any role in the charged violation of fighting, there was no acknowledgment or documentation in the misconduct report or within the hearing report as to Mr. Resch's hearing impairment, nor was there any documentation relative to effective communication during the hearing." (*Id.*, PageID.4959). Thus, as to each of Resch's convictions, the Settlement Monitor recommends that "the MDOC either dismiss/remove the misconduct from Mr. Resch's file, or, order the misconduct to be re-issued/re-heard and ensure that effective communication takes place during the hearing, effective communication is effectively documented, and Mr. Resch's hearing impairment be considered during the entire misconduct hearing process and documented appropriately within the hearing report." (*Id.*, PageID.4958-59).

  v.  *The MDOC Appeal and the Parties' Arguments*

On October 29, 2020, the MDOC filed its instant appeal of the Settlement Monitor's recommendations. (ECF No. 184). The MDOC makes a few arguments, some more procedural and some more substantive. On the procedural side, the MDOC argues that the Court should not reach the merits of the dispute because Resch "opted not to exhaust all of his administrative remedies despite being fully aware of these administrative remedies and never pursued any

---

Monitor, reviewing the evidence, found that the officer did take reasonable steps to effectively communicate with Resch.

remedies allowed in the court system." (*Id.*, PageID.4903-04). The MDOC also argues that "the Settlement Monitor cannot order the MDOC to dismiss or re-hear Mr. Resch's 2019 charges, as he attempts to do here. . . . The parties did not agree to allow inmates to bypass exhaustion requirements or to elevate the Settlement Monitor to the position of a judge who would adjudicate the merits of prison disciplinary proceedings." (ECF No. 189, PageID.5039, 5041). Finally, the MDOC proffers various substantive reasons as to why the Court should sustain the results of Resch's disciplinary hearings. Resch, on the other hand, argues that the MDOC's position "ignores the terms of the Monitor complaint adjudication process set forth in the Stipulated Order, which plainly does not require exhaustion of administrative remedies to seek relief," that affirming the Settlement Monitor's recommendation will "ensure[] that the MDOC provides equal access and effective communication during the disciplinary process, as is required by the [Settlement] Agreement," and that the Court should reject the MDOC's "post-hoc attempt to document effective communication . . ." (ECF No. 187, PageID.4989-90).

While the Court disagrees with the MDOC as to its exhaustion argument and its suggestion that there are no circumstances under which the Court, *in this action*, could take action that might result in setting aside a class member's disciplinary conviction, ultimately, because Resch has not shown a violation of the Settlement Agreement by the MDOC, the Court will sustain the MDOC's appeal of the Settlement Monitor's recommendations.

**Discussion**

  *i.  The MDOC's Exhaustion Argument*

The MDOC argues that Resch "opted not to exhaust all of his administrative remedies despite being fully aware of these administrative remedies and never pursued any remedies allowed in the court system." (*Id.*, PageID.4903-04). The MDOC argues that Resch was required

10

to appeal his Class I fighting misconduct conviction "to the Hearings Administrator in the Office of Legal Affairs," and then to appeal "to a court of law," *i.e.*, a Michigan Circuit Court. (*Id.*, PageID.4909-10). The MDOC argues that Resch was required to appeal his Class II misconduct convictions "to the Deputy Warden as is required under policy in order to exhaust" his claim, along with grieving the claim "through Step III" of the MDOC's familiar grievance appeal process. (*Id.*, PageID.4910-12).

At least as it relates to the instant dispute under the Stipulated Order, the MDOC's exhaustion argument lacks merit.[3] The Stipulated Order's Exhaustion Provision expressly reminds class members "of their obligations to exhaust their administrative remedies to the extent required by law before seeking any remedies **through the court system**." (ECF No, 150, PageID.4712-13) (emphasis added). Reading the Stipulated Order as a whole, and considering this case's procedural posture, the Court finds that this provision requires an MDOC inmate to "properly exhaust" in the traditional sense any claim he wishes to bring as a separate civil action, but that it does not prohibit this Court from considering disputes that the parties have agreed to resolve through the process explained in the Stipulated Order.

First, the Stipulated Order distinguishes between claims for "fees and/or money damages" which "must be made through an independent cause of action," and therefore must be exhausted in the traditional sense, and the resolution of disputes regarding "the implementation of the terms and conditions of the Settlement Agreement," which the parties have agreed will be submitted to the undersigned for "final and binding" determination which "may not be objected to or further

---

[3] To be clear, the Court expresses no opinion regarding the exhaustion requirements that apply to any separate claim Resch may have outside of a dispute that is brought to the Court pursuant to the dispute resolution process described in the Stipulated Order, or whether Resch did or did not properly exhaust those claims.

11

appealed." (*Id.*, PageID.4712-13, 4715-16.) The Stipulated Order further highlights this distinction by noting that the "process" described in the Stipulated Order "does not require exhaustion of administrative remedies before submitting a complaint to the Settlement Monitor," which is the first step in the dispute resolution process. In other words, the Stipulated Order distinguishes between a class member's right to seek redress through the "court system" as opposed to through the dispute resolution "process" described therein. Accordingly, any disputes brought before the undersigned for resolution pursuant to the Stipulated Order must only be "exhausted" pursuant to the terms of the Stipulated Order. There is no dispute that the parties followed those requirements here; Resch raised the issues with the Settlement Monitor, the Settlement Monitor gathered information from both sides and made a recommendation, and the MDOC rejected that recommendation and appealed to the undersigned.

Second, the MDOC's interpretation ignores that the disputes are before this Court because *the MDOC* has, pursuant to the Stipulated Order, raised them in its instant appeal. Given that the Stipulated Order provides the "objecting party may appeal the Settlement Monitor's recommendation" to the undersigned, the MDOC's position on exhaustion would essentially prevent class members from ever seeking to have this Court uphold a recommendation of the Settlement Monitor; even if the class member fully exhausts his claim as the MDOC argues he must, the MDOC, as the "objecting party," could simply refuse to file an appeal with this Court. The Court will not adopt an interpretation of the Stipulated Order that could lead to such a perverse result.

    ii.    *Disputes Subject to Review under the Stipulated Order*

Next the Court considers the MDOC's argument that "the Settlement Monitor cannot order the MDOC to dismiss or re-hear Mr. Resch's 2019 charges, as he attempts to do here. . . . The

12

parties did not agree to allow inmates to bypass exhaustion requirements or to elevate the Settlement Monitor to the position of a judge who would adjudicate the merits of prison disciplinary proceedings." (ECF No. 189, PageID.5039, 5041). Because, as an alternative to dismissing the disciplinary charges against Resch, the Settlement Monitor is recommending the lesser consequence of having the disciplinary charges "re-issued and/or re-heard," and the Court finds that even that relief is unwarranted, it declines to decide whether the outright dismissal of charges could be appropriate here or in any other case. However, the Court has no qualms finding that the Settlement Monitor has the authority to recommend that a misconduct charge be re-issued or re-heard where the dispute about the issuance of the misconduct ticket, or the hearing on that matter, concerns "the implementation of the terms and conditions of the Settlement Agreement." (ECF No. 150, PageID.4712.) Indeed, the Stipulated Order does not carve out any particular category of disputes from that already very narrow universe.

      iii.      *The Court will Sustain the MDOC's Appeal*

While each of the three misconducts in issue includes some reference to Resch's hearing capabilities, Resch fails to show any actual violation of the parties' Settlement Agreement. The Settlement Agreement requires the MDOC to, among other things, "ensure that Deaf and/or Hard of Hearing Prisoners have full and equal access to the same programs, activities, services and accommodations available to non-Deaf and/or Hard of Hearing Prisoners." (ECF No. 118-2, PageID.4348.) The MDOC also must provide a qualified sign language interpreter if requested to assist the inmate at the disciplinary hearing. (*Id.*, PageID.4355.) But nowhere in his papers does Resch allege that he was actually unable to effectively communicate during the three misconduct hearings in question or that he requested the assistance of an interpreter. Resch does not allege he could not hear what was being said at the hearing, or what questions were being asked of him. Nor

does he allege that he was unable to fully share with the hearing officers his version of the salient events and arguments as to why he should be found not guilty, including any contention that his lack of a hearing aid led him to receive the misconducts. Nor did Resch use the Stipulated Order's dispute resolution process to assert an affirmative claim that the MDOC's failure to provide him with hearing aids at any particular time violated the Settlement Agreement.

Resch's arguments are more nuanced. First, Resch argues the MDOC violated the Settlement Agreement by failing to "document that effective communication" took place during the three misconduct hearings. While the Court concurs that it is prudent for the MDOC to document that effective communication occurred during high-stakes interactions, the Settlement Agreement contained no explicit "documentation" obligation on the MDOC. Therefore, the Court is unwilling to find that the MDOC's failure to document that effective communication took place during the hearings violated the Settlement Agreement. That the MDOC later realized the benefit of such documentation and included such a requirement in its formal policies did not create a retroactive obligation to provide such documentation.

Second, Resch's individualized arguments as to the three misconducts simply do not establish violations of the Settlement Agreement. As to the out of place disciplinary hearing, Resch argues that "the hearing officer did not consider whether [he] might have been out of place because he did not hear the correction officer yell for count time." But, if in fact the hearing officer didn't consider that possibility, it is only because Resch didn't raise it. As noted above, the record makes clear that Resch did not challenge the substance of this charge, but rather, only claimed that his due process rights were violated because he "was never reviewed on the misconduct." But, the Settlement Monitor found that "MDOC staff made reasonable steps to conduct the misconduct review." The sole reason for the Monitor's recommendation as to this conviction is that the MDOC

"should have better *documented* the steps taken to communicate (effectively communicate with Mr. Resch)." (ECF No. 184-8, PageID.4958) (parenthetical in original) (emphasis added). As discussed above, however, "documentation" of these steps was not required by the Settlement Agreement at the time in question, so the MDOC's alleged failure to do so did not violate that Agreement.

As to the fighting misconduct, Resch argues that "[his] disability was not considered when the officer went to hear his case." (ECF No. 187, PageID.4993.) But Resch fails to show exactly what the hearing officer was supposed to consider. The only reference in the salient documents to Resch's ability to hear is that a corrections officer gave "verbal direction" to both Resch and prisoner Joyce, and "both prisoners complied." Moreover, the record shows that Resch was fully able to articulate the reasons why he believed he should not be convicted of the fighting misconduct. Specifically, Resch argued that Joyce had hit him first, and "he hit Joyce back to defend himself . . ." The hearing officer rejected Resch's defense because "it is contradicted by the video which showed him hitting Joyce first." The Settlement Monitor writes that while he "does not believe that Mr. Resch's hearing impairment played any role in the charged violation of fighting, there was no acknowledgment or documentation in the misconduct report or within the hearing report as to Mr. Resch's hearing impairment, nor was there any documentation relative to effective communication during the hearing." (ECF No. 184-8, PageID.4959.) But again, the Settlement Agreement did not require the MDOC to take these actions. In short, nothing about the hearing or the hearing officer's consideration of the fighting charge against Resch violated the Settlement Agreement.

Finally, Resch argues, "for the disobeying of a direct order hearing, the hearing officer did not document any consideration of how Mr. Resch's hearing impairment might have affected his

15

ability to comply." (ECF No. 187, PageID.4993) (citing ECF No. 184-8, PageID.4958-59.) But, again, the MDOC's failure to "document" the consideration of Resch's hearing impairment is not itself a violation of the Settlement Agreement. Moreover, Resch had a full opportunity to explain (and did explain) to the hearing officer his contention that he did not hear the guard's instruction for him to move. (ECF No. 184-8, PageID.4958-59.) There is no indication in the record of Resch contending that he was unable to hear the hearing officer's questions or any of the statements made at the hearing. Nor does Resch contend that any issues with his hearing prevented him from advocating his position. Finally, the event in question took place on April 22, 2019, and Resch's disciplinary hearing was held on April 25, 2019, and decided on April 30, 2019. (ECF No. 184-6, PageID.4932.) Although Resch eventually was diagnosed as having a hearing impairment "with deficit" on February 26, 2020, not only did Resch not have that diagnosis as of April 2019, but just two weeks after the hearing officer's decision, Resch was diagnosed as have a hearing impairment "without deficit." (ECF No. 184-8, PageID.4958.)

For all of these reasons, the Court **SUSTAINS** the MDOC's appeal of the Settlement Monitor's recommendations to dismiss and/or re-hear Resch's misconduct charges. **(ECF No. 184.)**

    **IT IS SO ORDERED.**

Dated: May 5, 2021                          s/David R. Grand
Ann Arbor, Michigan                DAVID R. GRAND
                                                   United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 5, 2021.

                                                  s/Eddrey O. Butts
                                                  EDDREY O. BUTTS
                                                  Case Manager